STEUDLE *v.* YELLOW & CHECKER CAB & TRANSFER CO.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—
   PLAINTIFF'S TESTIMONY.
   Testimony relied upon by plaintiff must be accepted by Supreme
   Court as true in disposing of defendant's appeal from denial
   of its motion for judgment *non obstante veredicto.*

2. SAME—JUDGMENT NON OBSTANTE VEREDICTO—GREAT WEIGHT OF
   EVIDENCE—QUESTIONS FOR JURY.
   On appeal from denial of a defendant's motion for judgment
   *non obstante veredicto*, Supreme Court must accept the decision
   of the jury upon disputed questions of fact where the same is
   not contrary to the great weight of the evidence notwithstand-
   ing a different result would have been reached were it the
   trier of the facts.

3. CARRIERS—NATURE OF PASSENGER'S RELATION TO TAXICAB OWNER
   —PASSENGER FOR HIRE.
   In action for personal injuries against a taxicab owner and its
   driver for injuries sustained when cab collided with a tree,
   plaintiff's right to recover is dependent upon whether status
   of party who invited her to ride with him was that of a
   passenger for hire.

4. SAME—TAXICABS—ADDITIONAL TRIPS—PASSENGERS FOR HIRE.
   In passenger's action for injuries sustained while in a taxicab,
   for use of which a flat rate was charged for trip to another
   city, after such city had been reached, upon defendant's claim
   that after reaching destination in such city the parties were
   being driven as gratuitous guest passengers, question as to
   whether contract for hire then existed *held*, for jury as it was
   not necessary that fare for additional trips, taken after arriv-

* Continued from Vol. 286.

ing at such city, be paid or agreed upon in advance providing plaintiff's host, another passenger, had entered the cab with the means and intention of paying therefor and was thus accepted by the driver.

5. SAME—ENTRY OF PERSON IN CONVEYANCE WITH MEANS OF PAYING FARE—PRESUMPTION—INTENT—EVIDENCE.

Where a person enters a carrier's conveyance for the purpose of becoming a passenger with the means of paying his fare, the actual payment of fare is not essential to the establishment of the relation of carrier and passenger and payment of fare will be presumed to have been intended until evidence shows otherwise.

6. APPEAL AND ERROR—INSTRUCTIONS—REQUESTS TO CHARGE—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.

In plaintiff's action for injuries sustained while a passenger in defendants' taxicab where trial court charged that it was understood that scheduled flat rate price for trip to another city would cover waiting time in such other city and such other traveling therein or in its vicinity as might be made but evidence does not substantiate such an understanding, such matter is not considered where appellant owner of taxicab assigned no error as to charge as given nor upon court's failure to give a requested charge which more properly covered the issue.

7. CARRIERS—TAXICABS—ACTION OF DRIVER CONTRARY TO INSTRUCTIONS.

Taxicab owner's liability to plaintiff for injuries sustained while a passenger in its cab may not be avoided by whether or not driver was acting contrary to instructions as to reporting before making out of town trips and the matter of drinking while on duty where driver was engaged in the business of his master in transporting passengers at the time of the accident.

8. APPEAL AND ERROR—FINDING OF JURY ON QUESTION OF FACT—GREAT WEIGHT OF EVIDENCE.

Finding of jury for plaintiff on question of fact as to whether taxicab driver was transporting passengers, including plaintiff, for hire at time accident occurred may not be disturbed on appeal where not contrary to great weight of evidence.

9. SAME—JUDGMENT NON OBSTANTE VEREDICTO—PLAINTIFF'S TESTIMONY—JOINT ENTERPRISE—PASSENGER FOR HIRE—TAXICABS.

On appeal from denial of defendant taxicab owner's motion for judgment *non obstante veredicto* in action by plaintiff for

injuries sustained while a passenger in its cab, owner's dis-
claimer of liability on ground that the parties, including its
driver, were engaged in a joint enterprise *held*, untenable under
plaintiff's testimony establishing a contract of hire between
plaintiff's host, another passenger, and the defendant driver,
such evidence showing no common control and possession of
the machine and community of interest so as to make the
driver the agent of all other occupants of the machine and his
negligence imputable to them.

10. CARRIERS—TAXICABS—PASSENGERS FOR HIRE.

Owner of taxicab, as a common carrier, owed a duty to plaintiff,
found by jury to have been a passenger for hire, to exercise a
high standard of care.

11. SAME—TAXICABS—EVIDENCE—NEGLIGENCE—CONTRIBUTORY NEG-
LIGENCE—INTOXICATING LIQUORS—QUESTIONS FOR JURY.

In passenger's action against owner and driver of taxicab, evi-
dence *held*, to present for jury questions as to whether or not
the driver was guilty of negligence and whether or not plain-
tiff was guilty of contributory negligence in riding in cab
operated by such driver when she knew or should have known
he was intoxicated.

12. TRIAL—PREJUDICIAL ARGUMENT.

Record in action by plaintiff for injuries she sustained while a
passenger in taxicab owned by defendant corporation and
operated by defendant driver *held*, to show a deliberate course
of conduct on the part of plaintiff's counsel aimed at pre-
venting defendant owner from having a fair and impartial
trial which was so persistently followed that a charge of the
court in an effort to obviate the prejudice would have been use-
less, where it showed that verdict was strange and that such
counsel, among other things, argued, without support from
evidence, that such defendant was responsible for having plain-
tiff's daughter arrested and plead guilty to being drunk and
having its driver arrested and plead guilty to a charge of
driving while drunk all to the end that the corporation was
attempting to avoid liability by unlawful means.

Appeal from Bay; McCormick (James L.), J.
Submitted June 14, 1938. (Docket No. 28, Calendar
No. 39,987.) Decided December 21, 1938.

Case by Alice Steudle against Yellow & Checker Cab & Transfer Company, a corporation, and Lawrence Sayen for personal injuries sustained when the taxicab in which she was riding ran into a tree. Verdict and judgment for plaintiff. Defendant Yellow & Checker Cab & Transfer Company appeals. Reversed and new trial granted.

*Leibrand & Leibrand,* for plaintiff.

*Millard & Roberts,* for defendants.

CHANDLER, J.   Plaintiff was injured while riding as a passenger in a taxicab owned by the defendant Yellow & Checker Cab & Transfer Company while the same was being operated by defendant Sayen, an employee. This appeal by the taxicab company followed a denial of motions for judgment *non obstante veredicto* and a new trial.

It is claimed by appellant that at the time of the accident, plaintiff was a gratuitous guest passenger and that Sayen was not acting within the scope of his employment.

Defendant Sayen and Kenneth Mosher both drove cabs for appellant in the city of Flint and vicinity. Sayen worked on the night shift and Mosher during the day, the latter often hiring Sayen's cab to take him to and from work at the regular meter rate for such trips.

On the evening of January 9, 1936, Sayen drove Mosher home from work, Mosher asking him to call for him about 8 o'clock p. m. of the following day as he desired to take a trip to Bay City. He was told by Sayen that the fare would be $8 which was the regular rate fixed by the company for a trip from Flint to Bay City, and which was agreeable to Mosher. Sayen appeared at the appointed time on

January 10, 1936, and the two started for Bay City, stopping first, however, to pick up Ruth Reno, a cousin of Mosher's who also lived in Flint. They then proceeded to Bay City and upon arrival drove to the Pine Crest beer garden located about two miles from the northerly limits of the city. Mosher testified that he instructed Sayen to drive him to the tavern as he was expecting to find a certain girl there. The three entered the beer garden between 9:30 and 10 o'clock p. m. and ordered beer. While drinking, plaintiff, accompanied by her daughter Rose, her son, William, and a third person by the name of Pete Lapan, entered the establishment. Mosher invited the new arrivals to sit at his table. They accepted, and the entire group drank beer and danced until 11:30 p. m., with the exception of Sayen, who, throughout the testimony is referred to as "the driver," despite the fact that he was well known to at least Mosher, Mrs. Steudle and family, and who it is claimed by plaintiff's witnesses, drank but two bottles of beer during the entire evening, did not dance, and sat back from the table a few inches wearing his official cap because he was considered on this occasion as a servant and "the driver."

Mosher did not find the girl for whom he was looking and at 11:30 p. m. directed Sayen to drive to a dance hall known as Lalonde's, thinking he might find her there. The entire group entered the cab and were driven by Sayen to the designated place where Mosher made an unsuccessful search for his girl. Mosher returned to the cab and told Sayen to drive them back to Pine Crest. At Pine Crest, the members of the party partook of more liquid refreshments, with the exception of Sayen.

About 1:30 a. m., January 11th, someone suggested that they obtain something to eat and Mosher

ordered Sayen to drive to Bay City for this purpose. They drove south on Henry Street to a point where it intersects with East South Union street. Sayen approached the intersection at a speed estimated to be between 25 and 30 miles per hour, being preceded by another automobile going in the same direction on the left side of the street. As he approached this car, Sayen twisted the wheel of the cab first one way and then the other, finally attempting to pass on the right side of the other vehicle. Just as he had passed, the cab struck a tree, resulting in plaintiff's injuries. The following morning Rose Steudle pleaded guilty to being drunk and Sayen to a charge of driving while drunk.

We have related substantially the testimony relied upon by plaintiff, and which we must accept as true in disposing of this appeal. Likewise, we must accept the decision of the jury upon disputed questions of fact where the same is not contrary to the great weight of the evidence, with the observation, however, that were we the triers of the facts in this particular instance a different result would have been reached.

Whether plaintiff was a passenger for hire depends upon the status of Mosher at the time of the accident. If he was a passenger for hire, plaintiff was likewise as there is nothing to indicate that the guests invited by Mosher were considered as gratuitous passengers or were accepted by the driver as such or that it was intended that they occupied a position different from that of Mosher while being transported in the cab as his guests. *Dion* v. *Drapeau,* 254 Mass. 186 (150 N. E. 14). See, also, 4 A. L. R. 1507; 45 A. L. R. 304; 69 A. L. R. 995.

While being driven in the city of Flint and on short trips, the cabs were operated on a meter basis.

For trips from Flint to other cities, a specified fixed rate was charged, which from Flint to Bay City was stated to be seven to eight dollars. Waiting time on such trips was charged at the rate of $1.50 per hour which was also a pre-determined rate, not dependent upon the operation of the meter. Appellant claims that when Sayen had driven from Flint to Bay City, or at least as far as the Pine Crest beer garden, the contract of hire terminated and that thereafter the parties were being driven as gratuitous guest passengers. It was not necessary that the fare for the additional trips taken after arriving at Pine Crest be paid or agreed upon in advance. If Mosher entered the cab with the means and intention of paying therefor and was thus accepted by Sayen, the jury could have properly found that a contract of hire existed covering the trips made subsequent to the arrival at Pine Crest.

"Where a person enters a car for the purpose of becoming a passenger, and with the means and intention of paying his fare the actual payment of fare is not essential to the establishment of the relation of carrier and passenger; and where a person boards a train with money sufficient to pay his fare, it will ordinarily be presumed that he intends to pay his fare on demand, unless his conduct is such as to show that he is trying to evade a demand being made on him, as by hiding himself or otherwise, and if he fails to pay after a demand and opportunity so to do the presumption ceases." (10 C. J. p. 620, § 1043).

The foregoing quotation from the text is amply supported by the cases cited in the notes.

The trial court charged, on this question, that,

"If it was understood that the fare of $8 would cover the trip to Bay City and return, and also the waiting time, and such other traveling as might be

made while in Bay City or in the vicinity, then the relation of carrier and passenger would continue during the trip from Pine Crest to the point where the accident occurred.''

The testimony does not substantiate an understanding that the original agreed price of $8 was also to cover additional trips after arriving at Pine Crest. However, appellant made no objection to this portion of the charge, and it has assigned no error thereon or upon the failure of the court to give a charge requested upon this point which more properly covered the issue. Therefore, we do not consider the question in disposing of the appeal.

It is claimed that Sayen was not acting within the scope of his employment because he was operating the cab in violation of certain rules promulgated by appellant in governing the conduct of their cabs and drivers. One of the rules required a driver to report before making out of town trips. Another prohibited drivers from drinking on duty. Plaintiff introduced evidence of consistent violation of many of the rules by the drivers in an attempt to show a waiver thereof on behalf of the company. This testimony was unimportant, however, because appellant's liability does not depend upon whether or not Sayen was acting contrary to his employer's orders. If he was engaged in the business of his master, the transportation of passengers for hire, appellant would be liable for his negligent acts even though at the time of the accident he was acting contrary to instructions. *Loux* v. *Harris*, 226 Mich. 315; *Rabaut* v. *Ford Motor Sales Co.*, 285 Mich. 111. And, as we have seen, the question as to whether Sayen was transporting passengers for hire was one to be submitted to the jury and was determined

adversely to appellant, which finding we are not at liberty to disturb.

Appellant disclaims liability on the additional ground that the parties were engaged in a joint enterprise, citing several cases including *Hopkins* v. *Golden*, 281 Mich. 389. Obviously, this rule is inapplicable in view of the claims and testimony produced by plaintiff to establish a contract of hire between Mosher and Sayen. Based upon that evidence, there was no common control and possession of the machine and community of interest so as to make Sayen the agent of all the other occupants of the car and his negligence imputable to them.

Appellant also urges that there was no evidence of negligence on the part of Sayen. Appellant, as a common carrier, owed a duty to plaintiff to exercise a high standard of care. *Trent* v. *Pontiac Transportation Co., Inc.*, 281 Mich. 586 (2 N. C. C. A. [N. S.] 485). We believe a question for the jury was presented on the facts stated as to whether or not Sayen was guilty of negligence.

It is also argued that plaintiff was guilty of contributory negligence in riding in the cab operated by Sayen when she knew or should have known he was intoxicated. Whether or not Sayen was intoxicated was also a question for the jury as the testimony on this point was conflicting.

Further, appellant urges that it is entitled to reversal because of certain statements made by plaintiff's counsel in the course of his closing argument to the jury, which are claimed to have been prejudicial. The argument complained of was as follows:

"*Mr. Leibrand:* 'When they got into Pine Crest they picked up Alice Steudle and her daughter and a couple of other men.' That is the opening statement of defendant. What idea would a jury get

from that if they hadn't heard any testimony? The other two men turned out to be Mrs. Steudle's son and innocent little Pete Lapan, a chum of Billy's. The inference there that there were bad men and women.

"*Mr. Henry:* I object to that and take an exception to it.

"*Mr. Leibrand:* * * * And after he came back from Lalonde's he didn't drink a drop. Rushford with his conclusion that he was drunk. I wonder what the insurance company and taxicab company was doing from 2:30 until 9 o'clock when they accepted a plea of guilty over there in the police court.

"*Mr. Millard:* I take an exception to that remark about the insurance company.

"*Mr. Leibrand:* All right. Let me have that policy. I want it for my argument. At 2:30 in the morning the taxicab company was notified of the smashup. Counsel says: 'We aren't insured because they went over 10 miles from Flint,' and finally they brought in a policy here that makes it 20 miles, so the taxicab company has to pay the damage if there is a judgment in this case, and yet they were not particularly interested about the thing; at 2:30 they got notice and by 9:30 they got over here they say, and Mr. Ellis, if he is one of their officers over there, just got into the police court after Sayen had plead guilty; after he was knocked unconscious, sewed up by a doctor and put into the bull pen for a couple of hours, no examination as to whether he had recovered consciousness or was in his right mind, and I want to say to you that that kind of a plea should not have been accepted and would not have been accepted by any court in Hitler Germany or Stalin Russia, that kind of a plea of guilty would not have been accepted in any other decent court in the world, where a man was in the condition Sayen was in at that time.

"*Mr. Millard:* An exception on the record to that argument.

"*Mr. G. C. Leibrand:* But he was given a good, stiff sentence. Now, this jury has a right not only to determine who is telling the facts in this case and who is not telling the facts, but there are circumstances in this case that gives you the right to look into those circumstances, and on that circumstantial evidence you can infer from what happened, and it is within your province to infer that this taxicab company is at the bottom of this whole diabolical thing, in arresting Sayen and having him plead guilty, and in arresting Rose Steudle, and she pleads guilty and tells you why.

"*Mr. Millard:* An exception.

"*Mr. Leibrand:* * * * This taxicab company, by its corporate existence, can combine their energy and capital and do many things an individual cannot do; it has its ramifications all over the State wherever they are doing business.

"*Mr. Millard:* An exception to that, there is no such testimony as that."

Exceptions were noted to this argument by appellant, but the court was not requested to warn the jury or charge them that the same was improper and should be disregarded.

In the case of *Curth* v. *New York Life Ins. Co.,* 274 Mich. 513, and cases there cited, we held that in order to base error upon a claim of improper argument there should not only be an objection but the court should be requested to charge or caution the jury. Most of the cases concerned with the question seem to involve a single transgression which presumably occurred inadvertently.

We believe the record in the instant case shows a deliberate course of conduct on the part of counsel for plaintiff aimed at preventing defendant from

having a fair and impartial trial. We think the course of misconduct was so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless.

We appreciate that this court has gone far in holding that an instruction of the trial court will cure an improper argument; and that the line of demarcation between an absolutely prejudicial argument, the effect of which cannot be removed from the minds of the jurors, and extravagant phrases spoken in the heat of argument, may be said to be a narrow and a wavering one. This presents the question as to whether it can be said that the effect of this unquestionably improper argument was such that if the trial court had rebuked counsel and charged the jury to disregard it the error would have been cured. It cannot be denied that a reading of the record in the instant case convinces one that the verdict of the jury was indeed strange.

The constant reiteration in his argument to the jury that the defendant was lax in ascertaining what happened in Bay City, and particularly that the jury could "infer that this taxicab company is at the bottom of this whole diabolical thing, in arresting Sayen and having him plead guilty, and in arresting Rose Steudle," may well have been the basis for this unusual verdict of the jury. If this is so, would a charge by the trial court that there was nothing in the record to warrant this allegation and that the jury was to disregard the argument have been sufficient to rid their minds of the impression created; that is, that the defendant was seeking to avoid liability contrary to law? What effect the argument had upon the jury, and what effect a charge of the court to disregard that argument would have, is, of course, unknown, but it cannot be doubted that the

argument was made to prejudice the minds of the jurors against the defendant taxicab company without any basis in the record.

It is our conclusion that the argument as made so inflamed the minds of the jury against the defendant that a charge to disregard it would have been useless; and that, therefore, it was unnecessary for the defendant to request such a charge.

Judgment reversed and a new trial granted, with costs to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and MCALLISTER, JJ., concurred.