FELLOWS v SUPERIOR PRODUCTS COMPANY

Docket No. 129846. Submitted December 9, 1992, at Detroit. Decided April 27, 1993; approved for publication August 5, 1993, at 9:00 A.M.

Steven Fellows, as personal representative of the estate of Wesley W. Risi, deceased, brought a wrongful death action in the Wayne Circuit Court against Superior Products Company, alleging liability on a theory of attractive nuisance with respect to the decedent's accidental death on the defendant's premises. The decedent, age twelve, had entered the defendant's fence-enclosed facility to play on concrete pipes stored there. One of the pipes rolled over the decedent and crushed him. A jury returned a verdict in favor of the plaintiff and awarded damages that included exemplary damages. The court, Richard P. Hathaway, J., disallowed the award of exemplary damages and refused the defendant a new trial. The defendant appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. The trial court did not err in striking the award of exemplary damages from the verdict. Exemplary damages are not recoverable in a wrongful death action.

2. The defendant was denied a fair trial as a result of repeated comments by plaintiff's counsel stressing the wealth, power, and insensitivity of the defendant. Because the defendant stipulated that the utility of maintaining the alleged dangerous condition and the burden of eliminating the danger were slight when compared to the risk to the decedent and other children, the trial court erred in allowing evidence of the defendant's financial condition and photographs of the fence as it had been repaired two weeks after the accident.

Reversed and remanded for a new trial.

CAVANAGH, P.J., concurring in part and dissenting in part,

REFERENCES

Am Jur 2d, Damages § 781; Death §§ 255-263; Trial §§ 672-675.

Claim for punitive damages in tort action as surviving death of tortfeasor or person wronged. 30 ALR4th 707.

Counsel's appeal in civil case to wealth or poverty of litigants as ground for mistrial, new trial, or reversal. 32 ALR2d 9.

agreed that exemplary damages are not recoverable in a wrongful death action, but stated that admission of evidence of the defendant's financial condition was proper inasmuch as such evidence had a bearing on whether the utility of maintaining the dangerous condition and the burden of eliminating the danger were slight when compared to the risk to the children involved, a point not conceded by the defendant. The denial of the defendant's motion for a new trial should be affirmed.

1. DAMAGES — WRONGFUL DEATH — EXEMPLARY DAMAGES.

Exemplary damages are not recoverable in a wrongful death action (MCL 600.2922; MSA 27A.2922).

2. TRIAL — ARGUMENTS BY COUNSEL.

In a jury trial of an action for damages against a corporate defendant, comments by the plaintiff's counsel that stress the wealth, power, and insensitivity of the defendant are improper and may constitute a ground for invalidating a verdict in favor of the plaintiff where the comments are part of a deliberate course of conduct aimed at depriving the defendant of a fair and impartial trial and the resultant prejudice to the defendant cannot be obviated with a cautionary instruction to the jury.

*Mayer B. Gordon & Associates, P.C.* (by *Frank G. Becker, Mayer B. Gordon,* and *Paul R. Swanson*), for the plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Paul S. Koczkur, John G. Gleeson,* and *Phyllis F. Snow*), for the defendant.

Before: CAVANAGH, P.J., and MACKENZIE and GRIFFIN, JJ.

PER CURIAM. In this wrongful death action, defendant appeals and plaintiff cross appeals two postjudgment orders issued by the Wayne Circuit Court. Following a jury verdict in favor of plaintiff, the circuit court granted in part defendant's motion for judgment notwithstanding the verdict, denied defendant's motion for a new trial, and granted in part and denied in part defendant's

motion to set aside the judgment. We reverse both orders and remand for a new trial.

I

This is a tragic case. Defendant, Superior Products Company, is a manufacturer of concrete products used in construction projects. On December 30, 1986, plaintiff's decedent, twelve-year-old Wesley Wayne Risi, went to defendant's Taylor, Michigan, facility to play on top of the large concrete pipes defendant stored there. Accompanied by two of his friends, the decedent entered defendant's facility through a large opening in the fence and began climbing the pipes. The decedent was fatally injured when one of the pipes unexpectedly rolled onto him and crushed him.

Plaintiff sued defendant, claiming liability on a theory of attractive nuisance. After a lengthy trial, a jury found in favor of plaintiff and awarded damages in the amount of $2,273,500.

II

The primary issue on appeal concerns the admissibility of certain evidence introduced by plaintiff to support the claim for exemplary damages. We begin by noting that, contrary to plaintiff's position on cross appeal, exemplary damages are not recoverable in a wrongful death action. The various authorities supporting this rule were summarized recently by the federal district court in *In re Disaster at Detroit Metropolitan Airport on August 16, 1987,* 750 F Supp 793, 805 (ED Mich, 1989):

> In Michigan, the courts of that State refuse to allow the recovery of punitive damages. See *Kewin*

*v Massachusetts Mutual Life Ins, Co,* 409 Mich
401; 295 NW2d 50 (1980); *Currie v Fiting,* 375
Mich 440; 134 NW2d 611 (1965); *Hicks v Ottewell,*
174 Mich App 750; 436 NW2d 453 (1989); *Kirk v
Ford Motor Co,* 147 Mich App 337; 383 NW2d 193
(1985); *Association Research & Development Corp
v CNA Financial Corp,* 123 Mich App 162; 333
NW2d 206 (1983), lv den 418 Mich 858 (1983).
While exemplary damages are distinct from puni-
tive damages and are designed to compensate
plaintiffs for humiliation, outrage, and indignity
resulting from a defendant's wilful, wanton, or
malicious conduct, see *CNA Financial,* 123 Mich
App at 171; 333 NW2d at 211, neither form of
damages is available under the Michigan Wrongful
Death Act, MCLA 600.2922 [MSA 27A.2922] (West
1986). This act has been construed by the Michi-
gan Supreme Court as the statute which provides
the exclusive remedies for those injuries which
result in death, see *Endykiewicz v State Highway
Commission,* 414 Mich 377, 387-88; 324 NW2d 755
(1982); *Courtney v Apple,* 345 Mich 223, 228; 76
NW2d 80, 83 (1956), and that statute does not
provide for punitive or exemplary damages. See
*Bernier v Board of County Road Commissioners,*
581 F Supp 71, 80 (WD Mich, 1983); *cf. Currie,* 375
Mich 440; 134 NW2d 611.

We believe that this analysis represents a cor-
rect application of Michigan precedent. Accord-
ingly, we agree with defendant that the trial court
did not err in striking the $500,000 exemplary
damage award from the jury's verdict.

III

We also agree with defendant that simply strik-
ing the exemplary damage award from the verdict
was insufficient to eradicate the prejudice result-
ing from the numerous errors that occurred at
trial. Defendant argues that the entire proceedings

in this case were tainted by improper evidence and argument designed to portray defendant as a wealthy and callous corporation that deserved to be punished with a substantial judgment. After thoroughly reviewing the record in this case, we agree with defendant that prejudicial error occurred and that a new trial is warranted.

**A**

In an attractive nuisance case, one of the elements a plaintiff must prove is that the utility of maintaining the dangerous condition and the burden of eliminating the danger are slight as compared with the risk to the children involved. *Rand v Knapp Shoe Stores,* 178 Mich App 735, 740-741; 444 NW2d 156 (1989). In the present case, this element was not in dispute. Defense counsel offered on several occasions to stipulate that it was feasible for defendant to eliminate the danger by either repairing the fence or posting "no trespassing" signs.

Nonetheless, on the third day of trial, plaintiff sought to introduce evidence of defendant's financial records for the year 1986. Defense counsel objected on the basis that feasibility of repairs was not at issue and that using defendant's wealth to support a claim for exemplary damages was clearly improper. Ultimately, the trial court overruled defendant's objection without explanation. Plaintiff then called defendant's president, Howard T. Rex, Jr., as a witness and asked him about the company's assets and liabilities. Reading from defendant's balance sheet, Rex testified that in 1986 his company had assets in excess of $24 million and liabilities of approximately $15.6 million.

On cross-examination, defense counsel tried to rebut the inference of defendant's wealth by show-

ing that defendant had been losing money in recent years. Rex testified that defendant showed net losses of approximately $1.6 million in 1987, $980,000 in 1988, and $1.4 million from January 1, 1989, through September 30, 1989. Then, on redirect examination, plaintiff's counsel sought to show that the losses were simply the result of "creative accounting" by defendant:

> *Q.* [*Mr. Swanson*]: Mr. Rex, are you an accountant by education?
> *A.* No, not by education.
> *Q.* Have you ever heard of the term creative accounting?
> *A.* Yes.
> *Q.* What does that mean?
> *A.* Well, you get things to go the way you want them to go.
> *Q.* In the years that you took your losses, '87, '88, '89, did you get some federal—some sort of tax credits for those?
> *A.* Yes.
> *Q.* You wouldn't suggest to us, would you, that you took—you didn't take your salary in those years, would you?
> *A.* (No response).
> *Q.* You did not take your salary in '87, '88 or '89, did you?
> *A.* No.
> *Q.* Or any of the officers?
> *A.* No.

B

With the above evidence before the jury, closing arguments in this case became what can best be described as a virtual "free-for-all" with respect to the issue of defendant's financial status. In connection with his feasibility argument, plaintiff's coun-

sel characterized defendant as the "$24 million corporation":

> What did he say the cost of the signs would be, if he wanted to post them every fifty foot? A thousand bucks, eleven thousand dollars to do a tip-top job, state of the art, to a *twenty-four million dollar corporation*.
> I submit, gentlemen, that burden is slight. If they wanted to do a tip top job. As compared with the risk to children involved. [Emphasis added.]

Shortly thereafter, plaintiff's counsel emphasized the contrast between the plaintiff's family and defendant's wealth. Counsel told the jury:

> What can I say? How can I express the devastation that this needless tragedy has inflicted upon Wesley's mother, Fran. She's a single mother. She works hard. Set up an example for her boys. And *she's not a wealthy lady*. She works as a cashier. They tried to show, hey, this lady works for a living. Well, she's not ashamed of it. She worked hard. Set a good example for her boys. And, you know, *money was always short. She had two kids to feed, two kids to cloth [sic], but they never went to bed hungry*. They always showed up to school with clean clothes.
> You learned from Wendy McGee and most of all they had a loving home to come home to in the afternoon when school was done.
> Now what has she got to show for it? *She's got no jewels. No stocks. No bonds; no real estate investments*. All her blood, her sweat, her time; her love and money, they were all invested in her boys Larry and Wesley. These were her jewels. These were her investments. They were her life. [Emphasis added.]

During rebuttal, plaintiff's counsel again addressed the issue of defendant's wealth when he stated:

Mr. Rex got up on the stand. He told you in the year 1986 they had twenty-four million dollars in assets, only fifteen million dollars in liability. Okay.

And then in the succeeding years brought out by counsel on cross examination—excuse me.

Yes, cross examination, they said, well, okay, we lost a million. We lost a million and half in the following year. And then we lost another million, something like that. They lost a few million in there. Okay.

But then when Mr. Swanson, remember Mr. Swanson got back up and he said, oh, gee, that sounds terrible.

Did you take your salaries for those years; did directors and officers take your salaries?

Answer: yes.

*Q.* Did [sic] get tax refunds?

*A.* Yes.

*Q.* Do you know what creative accounting is?

Oh, yes. That's when you get things to go your own way.

Well, were they juggling the books to get things to go their own way?

Finally, near the end of his rebuttal, plaintiff's counsel made the following comment:

*Mr. Gordon:* You've heard all the evidence.

It is overwhelmingly in favor of the plaintiff. Anybody can see that. I know you've seen it. You know so much of the time we are just lost; we say, we say, God tell us what is right; what is true. *Seems like there is no justice. That the rich wins and the poor are powerless.* [Emphasis added.]

The transcript of the closing arguments is riddled with objections from both sides. In most instances, the objections were not ruled upon by the trial court. Ultimately, at the conclusion of plaintiff's rebuttal, defendant moved for a mistrial. The

sole comment by the trial judge was, "That's noted and denied, counsel."

At one point, defense counsel did attempt to use the financial evidence to his client's advantage. Although also improper, defense counsel told the jury that a substantial award of exemplary damages would force defendant to close its plant and put fifty local families out of work:

> Gentlemen, you shouldn't give not a single dollar, not one for exemplary damages. That's especially true despite the irrelevant value of the assets that Mr. Gordon likes to bring up.
>
> It is especially true because Superior Products has been losing money. I mean loss of money over the last few years. And the future, and its future doesn't look good.
>
> What Mr. Gordon is asking you to do is effectively shut [down] Superior Products and put fifty men with families out on the street. That's what Mr. Gordon wants.

C

In *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 111-112; 330 NW2d 638 (1982), our Supreme Court condemned as always improper comments that tend to stress the wealth, power, and insensitivity of a corporate defendant:

> The effect of these comments was to create in the minds of the jurors an image of Kinsman as an unfeeling, powerful corporation controlled by a ruthless millionaire. Even a juror who harbored no prejudice against corporations or millionaires might have been swayed by these inflammatory remarks to alter his view of the evidence.
>
> Our prior cases should have made clear that even isolated comments like these are always im-

proper, even if not always incurable or error requiring reversal. However, when, as in this case, the theme is constantly repeated so that the error becomes indelibly impressed on the juror's consciousness, the error becomes incurable and requires reversal. We find the following statement from *Steudle v Yellow & Checker Cab & Transfer Co,* 287 Mich 1, 11-12; 282 NW 879 (1938), to be applicable in this case:

"We believe the record in the instant case shows a deliberate course of conduct on the part of counsel for plaintiff aimed at preventing defendant from having a fair and impartial trial. We think the course of misconduct was so persistently followed that a charge of the court in an effort to obviate the prejudice would have been useless."

After thorough review, we are persuaded that defendant was denied a fair trial. By erroneously allowing proof regarding the question of exemplary damages, the trial court permitted plaintiff to cast defendant as a wealthy, callous, and insensitive corporation. As the last comment emphasized above plainly indicates, plaintiff was erroneously permitted to play on the helplessness that individuals sometimes feel in their dealings with large corporations. See *Duke v American Olean Tile Co,* 155 Mich App 555, 563; 400 NW2d 677 (1986). Moreover, we reject plaintiff's argument that defendant's attempt to use the financial evidence to its advantage cured any error.

Finally, we must discuss briefly one other significant error that occurred at trial. Although less serious than the above errors, the trial court improperly admitted into evidence photographs of the fence as it had been repaired two weeks after the accident. Plaintiff's counsel sought admission of these photographs to show the "feasibility of making these changes." As noted above, however, defense counsel stipulated that it was feasible to

make the repairs. Accordingly, defense counsel argued that in view of such an admission, MRE 407·barred the evidence. The trial court overruled the objection, stating, "I do in fact find these photographs have relevance." Because feasibility was not an issue, this ruling was erroneous.

On the basis of the foregoing, we vacate the orders below and remand this matter for a new trial. In view of our disposition, we need not address the remaining evidentiary matters raised by defendant on appeal. We note, however, that when this matter is retried, plaintiff shall not be permitted to introduce evidence of defendant's past misconduct unless such evidence is relevant to a material issue. Such evidence shall not be admitted to prove any matter which, by virtue of stipulation, is not in dispute. Compare *McDonald v Stroh Brewery Co,* 191 Mich App 601, 605-606; 478 NW2d 669 (1991).

IV

Defendant's remaining issues on appeal merit only cursory discussion. We reject defendant's argument that it was entitled to judgment notwithstanding the verdict on the basis of the decedent's age. Defendant's own expert agreed that a twelve-year-old would not recognize that the pipes would shift. Furthermore, our review indicates that defense counsel stipulated the verdict form now claimed to be erroneous. It is well settled that error requiring reversal must be that of the trial court and not that to which the appellant contributed by plan or negligence. *Bloemsma v Auto Club Ins Ass'n (After Remand),* 190 Mich App 686, 691; 476 NW2d 487 (1991). On remand, however, defendant shall be free to renew its objections to the verdict form on the basis that it fails to comply

with the tort reform act, MCL 600.6301 *et seq.*;
MSA 27A.6301 *et seq.*

Reversed and remanded. We do not retain juris-
diction.

Cavanagh, P.J. *(concurring in part and dissent-
ing in part).* While I agree with the majority that
exemplary damages are not recoverable in a
wrongful death action, I cannot agree that by
erroneously allowing proof regarding the question
of exemplary damages the trial court permitted
plaintiff to cast defendant as a wealthy, callous,
and insensitive corporation. The evidence regard-
ing defendant's financial status was admitted be-
cause plaintiff was required to prove that the
utility of maintaining the cement pipes for sale or
salvage and the burden of eliminating any danger
caused by the pipes was slight when compared to
the risk to the children involved. The evidence
established that only about three percent of defen-
dant's business was generated by the stored ce-
ment pipes and that it would have cost defendant
between $6,000 and $10,000 to address the dangers
caused by this practice.

Given this state of the record, I find no abuse of
discretion in the trial court's decision to admit
evidence of defendant's financial assets. It cer-
tainly has bearing on whether the utility of main-
taining the dangerous practice and the burden of
eliminating the danger were slight when compared
to the risk. And, contrary to the conclusion
reached by the majority, I am not convinced that
defendant conceded this element by stipulating
that it was feasible to repair its fence and post
warning signs. For this reason, I would affirm the
trial court's decision denying defendant's motion
for a new trial.