**Charles HOWARD, Individually and as Personal Representative of the Estate of Brian Patrick Howard, Deceased, Plaintiffs,**

v.

**CALHOUN COUNTY, Allen Byam, Individually and in his Official Capacity as Calhoun County Sheriff, Terry Cook, Individually and in his Official Capacity as Calhoun County Jail Administrator; Sheriff Deputy Butts; and Sheriff Deputy John Doe, Defendants.**

No. 1:99–CV–457.

United States District Court, W.D. Michigan, Southern Division.

May 10, 2001.

Byron H. Nolen, Ernest L. Jarrett, PC, Detroit, MI, for plaintiffs.

Richard H. Winslow, Cummings, McClorey, Davis & Acho, PC, Battle Creek, MI, for defendants.

### OPINION OF THE COURT ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McKEAGUE, District Judge.

This action grows out of the death of Brian Patrick Howard while incarcerated at the Calhoun County Jail. The complaint filed by the personal representative of the decedent's estate contains eight claims, under federal and state law. Now before the Court is defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff's decedent, Brian Patrick Howard, died on June 23, 1997 at the age of 28, while incarcerated at the Calhoun County Jail. At approximately 5:55 p.m., he simply collapsed while reading the newspaper in the "TV room." Despite efforts to resuscitate him, he was pronounced dead 40–45 minutes later.

Ostensibly, he was a healthy young man. He had no significant prior medical history that would have suggested any need for caution, activity restriction, or close observation. Nor, apparently, had he shown any symptoms of breathing difficulty or distress immediately before his collapse. The autopsy report of Forensic Pathologist Lawrence R. Simpson, M.D., concludes "it is most probable that Brian Patrick Howard suffered lethal cardiac dysrhythmia secondary to ischemic changes in his enlarged heart".

The focus of this litigation is on the inaction of corrections officers, and particularly defendant Deputy Michael Butts, the only officer on duty in "Pod B," immediately after Howard's collapse. Plaintiff alleges Deputy Butts was deliberately indifferent to Howard's serious medical needs. The allegation is based primarily on the account of inmate witness Vernon Banks.

According to Banks, Butts came over to the scene from his desk, attempted to clear the area of other inmates by ordering them to lock-down, and then returned to his desk to call for assistance. Banks dep. p. 14. As the other inmates ignored his orders to lock-down, Deputy Butts prevented them from touching Howard. *Id.* at 13–15, 54. Between 6:05 and 6:10 p.m., a second deputy, Jill Wolkiewicz, arrived and commenced CPR. In the meantime, Banks attests, Butts did nothing to directly help Howard. *Id.* at 14–15.

Butts' version is somewhat different, and much more detailed. He testified in deposition that when Howard collapsed, "I immediately went over and called the lock-down, got on the radio, called for medical and back-up." Butts dep. p. 15. Because Howard was shaking at first, Butts said he thought he was having a seizure; so Butts held Howard's head in his hands and tried to reassure him that help was on the way. *Id.* at 15–16. When he noticed that Howard was biting his tongue (causing bleeding) and having difficulty breathing, Butts pried his mouth open. *Id.* at 16–17. Butts remained occupied in this way until help arrived, in the form of Nurse Linda Devers and other deputies and emergency personnel. At that time, Howard had lost consciousness but was still breathing on his own, albeit with difficulty. Butts continued to assist in the efforts to resuscitate Howard, holding his head and holding the air mask to his face until the end. *Id.* at 28.

Another account comes from Nurse Devers. She arrived shortly before Howard stopped breathing. At that time, she remembers, Deputy Butts was present and so was Deputy Wolkiewicz. Upon surveying the situation, Devers ordered that an ambulance be called. Devers dep. p. 16. Wolkiewicz assisted Devers in performing CPR, at the chest. Devers remembers another deputy being on his knees near Howard, but she could not remember who that was. *Id.* at 15. Although she performed mouth-to-mouth resuscitation, she did not remember whether Howard had bitten his tongue or was bleeding from the mouth. *Id.* at 16.

Finally, Deputy Eric Foran, who responded to the call for help and arrived at the scene just before Nurse Devers, recalled that Butts was attending to Howard at that time, touching him and asking him questions. Foran dep. p. 19.

## II. PLAINTIFF'S CLAIMS

Named as defendants are Deputy Butts, Calhoun County, Sheriff Allen Byam, Jail Administrator Terry Cook, and Sheriff Deputy John Doe. All claims against Deputy John Doe and Jail Administrator Terry Cook were dismissed by orders dated November 1, 1999 and December 1, 1999, respectively. Plaintiff's eight claims against the remaining defendants may be summarized as follows:

First cause of action (against all defendants): denial of federally protected civil rights under 42 U.S.C. § 1983, i.e., infliction of cruel and unusual punishment, in violation of the Eighth Amendment, consisting of deliberate indifference to serious medical needs.

Second cause of action (against Sheriff Byam): violation of civil rights under 42 U.S.C. § 1983, i.e., alleging the deliberate indifference to decedent's serious medical needs was the result of official policies or practices.

Third cause of action (against Deputy Butts): under state law, intentional infliction of emotional distress.

Fourth cause of action (against all defendants): under state law, intentional and grossly negligent failure to take reasonable precautions to preserve decedent's health and safety.

Fifth cause of action (against Sheriff Byam): under state law, negligence in hiring, training and supervising personnel, and intentional or grossly negligent failure to terminate incompetent personnel.

Sixth cause of action (against Deputy Butts): under state law, intentional and grossly negligent failure to secure proper medical care for decedent.

Seventh cause of action (against all defendants): conspiracy to violate decedent's civil rights under 42 U.S.C. § 1985(3).[1]

Eighth cause of action (against Sheriff Byam): under state law, deliberate indifference and reckless disregard for decedent's rights, consisting of failure to discipline jail personnel.

Defendants contend there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on all these claims.

## III. SUMMARY JUDGMENT STANDARD

Defendants' motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed. R.Civ.P. 56(c). *See generally, Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). That is, the Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Id.*, at 323–24, 106 S.Ct. 2548. The rule

---

1. In response to defendants' motion for summary judgment, plaintiff concedes that this claim may be dismissed. It is therefore given no further consideration and will be dismissed by the Court.

thus allows the Court, in furtherance of the policy of "securing the just, speedy and inexpensive determination" of civil actions, Fed.R.Civ.P. 1, to conduct a sort of trial on the paper record, *see Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480–81 (6th Cir.1989), and to exercise some discretion in determining whether a claim or defense is plausible. *Barnhart,* 12 F.3d at 1389.

Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## IV. § 1983 CLAIMS

The Court first considers plaintiff's claims under 42 U.S.C. § 1983 that defendants are liable for deliberate indifference to Brian Patrick Howard's serious medical needs, resulting in cruel and unusual punishment, causing death.

"[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999), quoting *Hudson v. McMillian,* 503 U.S. 1, 20, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Napier v. Madison County, Kentucky,* 238 F.3d 739, 742 (6th Cir.2001), quoting *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994).

### A. Deputy Butts

To prevail on his claim that Deputy Butts, the only defendant directly responsible for Howard's custody at the time of his medical emergency, was deliberately indifferent to Howard's serious medical needs, plaintiff must establish both an objective component and a subjective component. *See Napier,* 238 F.3d at 742, citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the objective component, plaintiff must show that any delay in providing proper treatment to Howard subjected him to a substantial risk of serious harm. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *Napier,* 238 F.3d at 742. To satisfy the subjective component, plaintiff must show Butts actually knew that Howard faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847, 114 S.Ct. 1970.

In support of the objective component, plaintiff must adduce medical evidence es-

tablishing the detrimental effect of Deputy Butts' delay in providing needed medical treatment. *Napier*, 238 F.3d at 742. In this regard, plaintiff relies on the deposition testimony of Bader Cassin, M.D., to the effect that time is of the essence in the treatment of a heart attack victim. For present purposes, the Court assumes that Dr. Cassin's testimony is admissible and is sufficient to create a genuine fact issue concerning the objective component, i.e., whether Butts' alleged delay in summoning emergency medical assistance subjected Howard to a heightened risk of serious harm.[2]

The Court therefore focuses on the evidence pertaining to the subjective component. Viewing this evidence in the light most favorable to plaintiff, the Court essentially accepts Vernon Banks' account of Butts' conduct. According to Banks, Butts was, during the first 10–15 minutes after Howard collapsed, preoccupied with clearing the TV room, instead of directly administering aid to Howard. In the meantime, however, Banks acknowledges, Butts had called for assistance. Banks also concedes that "seven or eight" inmates who were gathered around Howard disregarded Butts' orders to lock-down because they were concerned about Howard. Butts ensured that none of them touched Howard before back-up assistance arrived.

On the face of things, then, even according to Banks' account, Butts took three distinct, reasonable steps to help ensure Howard's well-being. He called for help; he attempted to clear the TV room (so that Howard would be freely accessible to medical assistance when it arrived); and, when his attempts to clear the day room failed, he kept well-meaning, but perhaps ill-qualified, inmates from touching Howard.

This conduct does not bespeak a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. It does not suggest that "unnecessary and wanton infliction of pain" which implicates the Eighth Amendment. *Id.* Nor does it indicate a "reckless disregard" for Howard's safety. *Id.* at 836, 114 S.Ct. 1970.

Yes, arguably, Butts could have done more to help Howard than Banks remembers him doing. Specifically, plaintiff argues that Butts' first priority, upon witnessing Howard's collapse, should have been to call for emergency medical assistance, rather than to clear the TV room and call for the assistance of other deputies and the resident nurse. If EMS technicians had been earlier summoned, the argument goes, effective CPR could have been earlier commenced, improving the likelihood of Howard's resuscitation.

Plaintiff's argument may be entirely correct—in retrospect. For purposes of plaintiff's deliberate indifference claim, however, the blameworthiness of Butts' conduct must be measured in light of his subjective knowledge at the time of Howard's collapse. Then, there was no reason to suspect that Howard, an apparently normal, healthy 28–year old, was experiencing a heart attack. Butts states that he knew Howard's condition was serious (i.e., he was "not faking an injury"), but due to his shaking, suspected he was experiencing a seizure of some sort. Butts dep. p. 15. Banks' own testimony corroborates this impression. Banks dep. p. 13. Thus, there is no evidence suggesting that Butts actually knew the specific nature of the risks to Howard's health and safety.

▮ Further, Nurse Devers affirmed the importance of clearing the area around

---

**2.** The Court recognizes that defendants have moved to exclude Dr. Cassin's testimony, which motion remains pending.

a "person down" so as to enable effective assistance. Devers dep. p. 20. Thus, although it would not have been unreasonable or excessively cautious of Butts to have also immediately called for emergency medical assistance, his call for back-up and for the nurse, and his efforts to clear the day room were undeniably reasonable responses to the perceived risks. "Prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845, 114 S.Ct. 1970.

■ Liability for Eighth Amendment deliberate indifference requires a showing of "something more than mere negligence," "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835–36, 114 S.Ct. 1970. Here, viewing Banks' testimony in the light most favorable to plaintiff, but with due regard for the record as a whole, it is apparent that the evidence against Butts does not even hint at a "sufficiently culpable state of mind," but bespeaks, at worst, mere negligence. Plaintiff has failed to adduce more than a mere scintilla of evidence in support of the essential subjective component of his deliberate indifference clam. This is insufficient to forestall summary judgment, because a complete failure of proof on an essential element of a claim renders all other issues immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. It follows that defendant Butts is entitled to judgment as a matter of law on plaintiff's deliberate indifference claim.

## B. Municipal & Supervisory Liability

■ Plaintiff also alleges that Calhoun County and Sheriff Allen Byam are liable under § 1983 because their failure to implement an adequate medical emergency policy and failure to properly train corrections officers in the handling of medical emergencies proximately resulted in cruel and unusual punishment. In moving for summary judgment, defendants argue that plaintiff has failed to support such claims with evidence. Plaintiff responds by pointing to the Medical Emergency Response Policy No. J170.4 and arguing that, if it had been followed, then emergency medical assistance would have been summoned immediately.[3] Plaintiff also points to Butts' deposition testimony indicating that he had not received training in the handling of medical emergencies.

■ *Respondeat superior* is not available as a theory of recovery under § 1983. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir.1996). To impose liability on the County or the Sheriff, plaintiff must show that an officially executed policy, or the toleration of a custom, resulted in a constitutional deprivation. *Id.* Here, plaintiff alleges defendants' failure to implement an adequate medical emergency policy and appropriately train officers on its

3. This argument is based on a questionable premise. Under the policy, a cardio-pulmonary arrest ("i.e., person who is not breathing and/or has no pulse") is to be reported by the housing officer to Master Control as a "Code I," whereupon Master Control is to call for an ambulance. Where a person has a suspected seizure or is unconscious but is still breathing, the housing officer is to report a "Code II" to Master Control, whereupon Master Control is to call internal Health Care Staff.

Plaintiff impliedly argues that Butts, to comply with the policy, should have reported a Code I when Howard collapsed, triggering a call for an ambulance. Yet, the facts apparent to Butts when he made his call for assistance actually fit better under the Code II definition. Butts' conduct thus appears to have been in conformity with the policy, even though he testified he had not been trained to follow it. It is therefore questionable, if not doubtful, that implementation of and training on the policy would have made a difference.

observance represented a custom or policy of inaction or deliberate indifference.

■■■■ " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997), quoting *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997). A showing of simple or even heightened negligence will not suffice. *Stemler,* 126 F.3d at 865. A municipality can be held liable under § 1983 for the actions of its employee only if the risk of a constitutional violation arising as a result of inadequacies in the municipal policy was "plainly obvious." *Id.,* quoting *Brown,* 117 S.Ct. at 1393. "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler,* at 865. Essentially, plaintiff must establish (1) the existence of a clear and persistent pattern of mishandled medical emergencies; (2) notice or constructive notice on the part of the Sheriff and County; (3) defendants' tacit approval of the misconduct such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that defendants' custom or policy of inaction was the "moving force" or direct causal link in the constitutional deprivation. *See Doe v. Claiborne County,* 103 F.3d at 508. In other words, the evidence must show that the need to act was so obvious that the defendants' "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to inmates' constitutional rights. *Id.*

The present record fails to satisfy the above requirements in several respects. There is no evidence of previous mishandled medical emergencies at the Calhoun County Jail. There is no evidence that defendants had notice of a "plainly obvious" need to implement an improved policy or improve training of personnel. The evidence does not support the finding, therefore, that defendants had a "policy" of inaction or deliberate indifference. Nor is there evidence that any such policy was the moving force behind any misconduct by Butts that may have contributed to Howard's death. Based on the present record, no reasonable jury could find that the need for corrective action was so obvious that defendants' conscious decision not to act can be said to amount to a policy of deliberate indifference to inmates' constitutional rights. It follows that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law.

Moreover, inasmuch as the analysis contained in part III, above, demonstrates that Butts' conduct did not result in the deprivation of a constitutional right, defendants Calhoun County and Sheriff Byam cannot, as a matter of law, be liable under § 1983. *See Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279 (6th Cir. 2000) (observing that the deprivation of a constitutional right is a threshold prerequisite to municipal liability under § 1983); *Napier v. Madison County, Kentucky,* 238 F.3d 739, 743 (6th Cir.2001) (same).

Accordingly, defendants Calhoun County and Sheriff Byam are also entitled to summary judgment on plaintiff's § 1983 claims against them.

## V. STATE LAW CLAIMS

### A. Intentional Infliction of Emotional Distress

In the third cause of action, plaintiff alleges Deputy Butts, by his failure to take appropriate actions, intentionally inflicted

emotional distress upon Brian Patrick Howard. Defendant Butts challenges this claim on two grounds. First, he argues that emotional distress damages are not recoverable by plaintiff under Michigan's Wrongful Death Act, citing *Fellows v. Superior Products Co.*, 201 Mich.App. 155, 506 N.W.2d 534 (1993).

■ *Fellows* is inapposite. It actually stands for the proposition that *exemplary damages* —which, indeed, are designed to compensate a plaintiff for humiliation, outrage and indignity resulting from a defendant's willful, wanton or malicious conduct—are not recoverable under the Wrongful Death Act because the statute simply does not provide for them. *Id.*, 201 Mich.App. at 157–58, 506 N.W.2d 534. Defendant ignores the fact that "intentional infliction of emotional distress is a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages." *Rosenberg v. Rosenberg Bros. Special Acct.*, 134 Mich.App. 342, 350, 351 N.W.2d 563 (1984).[4] Damages for conscious pain and suffering, including emotional distress, experienced by a decedent prior to death are recoverable as an element of compensatory damages under Michigan's Wrongful Death Act. M.C.L. § 600.2922(6); *Brereton v. United States*, 973 F.Supp. 752, 757 (E.D.Mich.1997). There is thus no reason, to the extent a valid claim for intentional infliction of emotional distress is made out, that plaintiff could not recover damages for Howard's conscious emotional distress prior to death.

■ Defendant's second challenge is more effective. Deputy Butts contends that his conduct—even as described by Vernon Banks—was not, as a matter of law, so outrageous as to be actionable as intentional infliction of emotional distress. Plaintiff has offered no response.

■ The tort of intentional infliction of emotional distress has four elements:

(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.... Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

*Haverbush v. Powelson*, 217 Mich.App. 228, 233–34, 551 N.W.2d 206 (1996) (citations omitted). Even if Banks' account of Butts' conduct is accepted as true, there is no way his conduct can be reasonably characterized as "extreme and outrageous" or "reckless" or "atrocious and utterly intolerable." As detailed above, even according to Banks, Butts took at least three reasonable actions to materially assist Howard in his distress. There is no evidence that he intentionally inflicted emotional distress. Defendant Butts is clearly entitled to summary judgment on this claim.

### B. Gross Negligence

■ All of the remaining state law claims are treated by the parties in their arguments as essentially stating claims for gross negligence. That is, even plaintiff does not suggest the record supports the allegations of intentional wrongdoing. Defendants have challenged the gross negligence claims as barred by governmental immunity. M.C.L. § 691.1407. Plaintiff

---

4. Although the tort of intentional infliction of emotional distress has yet to be formally recognized by the Michigan Supreme Court, it has often been recognized by the Michigan Court of Appeals. *See e.g., Nelson v. Ho*, 222 Mich.App. 74, 85 n. 6, 564 N.W.2d 482 (1997); *Haverbush v. Powelson*, 217 Mich. App. 228, 233–34, 551 N.W.2d 206 (1996).

contends that claims for gross negligence are recognized as an exception to governmental immunity. M.C.L. § 691.1407(2)(c).

Both sides are correct. For purposes of the statutory exception, however, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* Moreover, as defendants point out, the Michigan Supreme Court has recently made it clear that liability may be imposed for gross negligence in avoidance of governmental immunity only where the grossly negligent conduct is *the* proximate cause of injury, i.e., "the *one* most immediate, efficient, and direct cause preceding injury." *Robinson v. City of Detroit,* 462 Mich. 439, 458–59, 613 N.W.2d 307 (2000).

Based on the present record, it is apparent for the reasons explained above in connection with plaintiff's § 1983 civil rights claims, that no reasonable jury could conceivably conclude that any of defendants' conduct in this case is properly characterized as "reckless." Nor could a reasonable jury conclude that defendants' conduct constituted the direct and proximate cause of Howard's death. It is thus apparent that the gross negligence exception is not applicable, that governmental immunity applies, and that defendants are entitled to summary judgment on the remaining state law claims as well.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted in its entirety. The death of Brian Patrick Howard is a tragedy, but the evidence fails to demonstrate that defendants bear any legally cognizable responsi-bility for it. A judgment order consistent with this opinion shall issue forthwith.[5]

## JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that plaintiff's claim against defendants for conspiracy to violate civil rights, the "seventh cause of action," is voluntarily **DISMISSED** with prejudice; and

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED;** and

**IT IS FURTHER ORDERED** that **SUMMARY JUDGMENT** is hereby **AWARDED** to defendants on all of plaintiff's remaining claims against them under federal and state law; and

**IT IS FURTHER ORDERED** that defendants' motion to exclude testimony of plaintiff's proposed medical expert witness is **DENIED** as moot; and

**IT IS FURTHER ORDERED,** pursuant to the Court's order allowing defendants' late-filed motion for summary judgment, dated November 20, 2000, that plaintiff shall, not later than May 23, 2001, file a bill of costs and attorney fees reasonably and necessarily incurred as a result of the tardiness of defendants' motion; and defendants shall, not later than June 1, 2001, file their objections, if any, to the bill of costs and fees.

---

5. This result makes it unnecessary for the Court to rule on defendants' motion to exclude testimony of plaintiff's proposed medi-cal expert witness, which motion will be denied as moot.