DUKE v AMERICAN OLEAN TILE COMPANY

Docket No. 83202. Submitted April 2, 1986, at Lansing. Decided October 21, 1986.

Marian Duke, individually and as personal representative of the estate of her deceased husband, Edward Duke, Sr., filed a suit in the Genesee Circuit Court against American Olean Tile Company, alleging negligence and breach of warranty regarding quarry tile manufactured by defendant and installed on a restaurant floor on which the decedent allegedly slipped, fell and fractured his right femur. Defendant appealed from the trial court's judgment on the jury's verdict awarding plaintiff $550,000 in damages, Robert M. Ransom, J.

The Court of Appeals *held:*

1. Testimony given by plaintiff's expert witness concerning the floor's slip resistance based on a test made by the expert five months after the decedent's injury was not supported by a proper foundation. Plaintiff failed to establish that the expert's test duplicated the actual conditions that existed on the day of the decedent's accident. The admission into evidence of the expert's testimony by the trial court therefore constituted error requiring reversal.

2. The closing arguments by plaintiff's counsel, who is plaintiff and decedent's son, denied defendant a fair and impartial trial. The arguments' purpose and probable effect was to direct the jurors away from the real issues to be decided and, instead, to render a verdict based upon passion, sympathy for the plaintiff and prejudice against the defendant.

3. A factual question regarding the decedent's exercise of due care was raised by evidence admitted at trial. The trial court's refusal to give a comparative negligence jury instruction re-

REFERENCES

Am Jur 2d, Evidence §§ 818, 823, 824.

Am Jur 2d, Negligence § 447.

Am Jur 2d, Trial §§ 280 et seq.

Modern development of comparative negligence doctrine. 86 ALR3d 1206.

See also the annotations in the Index to Annotations under Attorney or Assistance of Attorney; Experiments and Tests.

quested by defendant therefore constituted error requiring reversal. The trial court also erred in instructing the jury that it must presume due care as a result of the decedent's death. Instead, the trial court should have instructed the jury that there was a rebuttable presumption of due care.

4. The trial court did not abuse its discretion in preventing defendant from calling an expert witness on the basis of defendant's failure to comply with a local discovery rule requiring a party to provide the opposing party with a list of the names and addresses of witnesses the party intends to present at trial and a specific trial court order regarding the disclosure of the parties' expert witnesses.

5. Defendant was not prejudiced by plaintiff's failure to file a detailed damage specification as required by the pretrial order inasmuch as plaintiff had filed a detailed damage specification prior to the pretrial conference and plaintiff's answers to defendant's interrogatories provided defendant with information on the alleged damages.

6. The trial court did not abuse its discretion in denying defendant's motion to redepose the physician who treated the decedent following the accident. Defendant had sufficient time to redepose the physician and was advised by the trial court that it was free to call the physician to testify in court.

7. The trial court did not err in permitting plaintiff to amend her complaint to add the breach of warranty claim.

8. The trial court did not err in admitting into evidence, under the present sense impression exception to the hearsay rule, statements made by the decedent shortly after the accident during a telephone conversation decedent had with plaintiff.

9. The trial court erred in admitting into evidence statements made by the decedent to hospital personnel regarding the accident as statements of the decedent's then existing mental, emotional or physical condition. However, the error was harmless since the statements would have been admissible under the hearsay rule exception for statements made for purposes of medical treatment or medical diagnosis.

Reversed and remanded for a new trial.

1. EVIDENCE — TESTS — EXPERIMENTS.

The admission or exclusion of test results and experiments rests within the trial court's discretion, however, before such test results can be admitted, a proper foundation must be laid to show that the test in question properly duplicated the actual conditions giving rise to the lawsuit; a test must recreate the

original conditions of the occurrence before it has any probative value.

2. TRIAL — CLOSING ARGUMENTS — IMPROPER COMMENT OF COUNSEL.

A party may be denied of its right to a fair and impartial trial where closing arguments by the opposing party's counsel direct the jurors away from the real issues to be decided and, instead, to render a verdict based upon passion, sympathy for the plaintiff and prejudice against the defendant.

3. NEGLIGENCE — COMPARATIVE NEGLIGENCE — JURY INSTRUCTIONS.

A trial court, when deciding whether an instruction on comparative negligence is appropriate, must view the evidence in a light most favorable to the defendant and determine whether there is sufficient evidence for the jury to find negligence on the part of the plaintiff; circumstantial evidence and permissible inferences therefrom may constitute sufficient proof of negligence.

*Edward Earl Duke II,* for plaintiff.

*Barbier, Goulet, Petersmarck, Tolleson, Mead & Paige, P.C.* (by *Thomas H. Hill*), for defendant.

Before: J. H. GILLIS, P.J., and R. B. BURNS and G. B. FORD,* JJ.

G. B. FORD, J. Defendant appeals as of right from a jury verdict awarding $550,000 in damages to plaintiff for injuries incurred by plaintiff's deceased husband from a fall in a restaurant. Defendant was found liable as manufacturer of the quarry tile used on the floor of the restaurant, which plaintiff claimed was unsuitable for such use because of its slippery propensity when wet.

The incident in question occurred in a Halo Burger restaurant in Mt. Morris Township in September, 1981. At approximately 9:00 A.M., Edward Duke, Sr., entered the restaurant, fell on the floor, and broke his right leg. Although there were no

* Recorder's court judge, sitting on the Court of Appeals by assignment.

witnesses at the precise moment of the fall, customer Virgil Ross observed a substantial portion of the incident. Ross testified that a light, intermittent rain was falling that day. As he was walking toward the restaurant, Ross observed Mr. Duke walking with a limp at a brisk pace in front of him. As Ross reached the entrance and opened the door, he observed Duke falling inside the restaurant onto the quarry tile. Duke was 6½ to 7 feet from the door and two feet past a carpeted mat located just inside the door. Ross noticed that the tile floor was dry, as did two restaurant employees.

Marie Winters, the assistant manager of the restaurant, called for an ambulance, while Ross assisted Duke in contacting his wife by telephone. Ross recalled Duke telling his wife something to the effect that "he fell on his bad leg or he had a bad fall on his leg." The two restaurant employees recalled Duke saying that he fell on his bad leg or his bad leg gave out. By contrast, Marian Duke recalled her husband stating:

> [H]e stepped inside of the door, his feet flew out from under him, the floor was wet he stepped inside, his feet flew out from under him, and he could not control his fall.

Duke was transported to McLaren Hospital where Dr. Vladimir Schwartzman diagnosed the injury as a fracture of the right femur. He also determined that Duke had a mild arthritic condition in his right knee which did not contribute to the fall. An incidental diagnosis was that Duke suffered a pathological fracture, i.e., an abnormal break in the bone. X-rays taken of the leg revealed a suspicious condition which led Dr. Schwartzman to perform a biopsy. The biopsy revealed that Duke was suffering from cancer, identified as reti-

culum cell sarcoma. Duke died from cancer three years after the accident, and before trial began, without regaining the normal use of his leg.

On appeal, defendant raises numerous issues, three of which we find provide an independent basis for reversing the judgment for plaintiff and remanding the case for a new trial. The first of these errors concerns the admission of testimony from plaintiff's expert witness, high school teacher Orville Yenior. Mr. Yenior testified that he conducted a scientific test on the floor of the restaurant five months after the accident to determine the floor's slip resistance. A friction-measuring device described as a drag-type meter was utilized to determine a coefficient of friction, i.e., a numeric value between 0 and 1 used to describe the ratio of the force of friction to the weight of an object, measured by sliding an object along a surface. The force necessary to slide the object is measured in pounds. The higher the number achieved, the more slip resistant the surface is considered. Yenior found that the coefficient of friction of the restaurant's quarry tile was near 1 when dry, but dropped to 0.32 when wet and under "static" conditions. Static refers to the force which keeps an object from initially sliding. Once the slide begins, the condition is then "dynamic," and the coefficient of friction was determined to be 0.22.

The record indicates that the drag-type meter was selected for the test because it was less machine-dependent than other machines. Thus, some judgment was involved regarding the acceleration and velocity used to pull the machine across the floor during the test. Judgment was also involved in determining where to place weights in Duke's shoes, which were used for the test.

Yenior concluded that the floor was not suited

for the restaurant because moisture tracked in by customers created an extremely slippery situation. Although Yenior opined that his test procedure was reliable, he admitted that no industry standard regarding acceptable testing procedures and coefficients of friction had been established.

Defendant now argues that Yenior's friction test results should not have been admitted because plaintiff failed to establish a foundation for the test. We agree. Although the admissibility of test results and experiments performed by experts and nonexperts is a matter within the discretion of the trial court, "before such test results can be admitted, a proper foundation must be laid to show that the test in question properly duplicated the actual conditions giving rise to the lawsuit." *Hartford Fire Ins Co v Walter Kidde & Co, Inc,* 120 Mich App 283, 288; 328 NW2d 29 (1982); *Vanderberg v General Motors Corp,* 96 Mich App 683, 688; 293 NW2d 676 (1980). Thus, in order for the test performed by Yenior to have any probative value, it must have recreated the original conditions of the occurrence. *Hartford, supra,* p 288; *Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398, 417; 100 NW2d 257 (1960).

Here, five months elapsed between the time of the accident and the test. Plaintiff's witness testified that he had no knowledge of the physical condition of the quarry tile floor at the time of the accident. Plaintiff presented no evidence establishing its condition. When defendant objected and moved to strike Yenior's testimony on this basis, the trial court responded:

> Well, there has been no testimony that it was any different. Now if you are going to introduce some testimony that there was some change in it, I will entertain your motion, but I would like to know what that change is.

The trial court's ruling was erroneous because the issue was not whether testimony was presented tending to show that the conditions changed, but whether there was testimony tending to establish a substantial similarity of conditions. The trial court's decision effectively shifted the burden of proof on this essential factual issue to defendant. The burden, however, is on the party presenting the evidence to satisfy the court that the necessary similar conditions exist. *Pohlod v General Motors Corp,* 40 Mich App 583, 585; 199 NW2d 277 (1972). The floor in question was located at the entrance of a fast-food restaurant. Without proof that the condition of the floor as it existed at the time of the accident five months previously was effectively recreated at the time of the testing, Yenior's testimony lacked probative value and should have been stricken. Since this expert testimony was crucial to plaintiff's case, its admission amounted to error requiring reversal.

Defendant also contends that the closing argument given by plaintiff's counsel included numerous impermissible remarks which denied defendant a fair and impartial trial. Having reviewed the transcripts of the closing argument, we must agree. Viewing the argument as a whole, we can come to no other conclusion than that the purpose and probable effect was to direct the jurors away from the real issues to be decided and, instead, to render a verdict based upon passion, sympathy for the plaintiff and prejudice against the defendant.

To begin, throughout the trial and closing argument, plaintiff's attorney, who is the son of plaintiff and decedent Edward Duke, Sr., constantly referred to his clients as "Mom and Dad." There is a strong possibility that such references left the jurors with the impression that the attorney had some personal perception of the damages incurred

outside of the evidence placed on the record. For example, plaintiff's attorney gave the following personal perception of his parents' marital relationship:

> What about their marriage relationship, his sleeping arrangement? He had to sleep in his own bed, she had to sleep in a different bed. They were no longer lovers.
>
> I am not, I am not embarrassed to stand up here in front of you and to talk about my parents as being lovers because they loved each other very much. And there she was watching her husband when they both knew that he had a limited time left.

This mode of argument carried throughout the entire closing, potentially evoking sympathy from the jury and altering their view of the evidence.

Plaintiff's attorney also remarked on the defendant's corporate nature and wealth, which the Supreme Court has noted is always improper, although not always constituting error requiring reversal. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 111; 330 NW2d 638 (1982). However, we construe the comments of plaintiff's counsel as evidencing "a deliberate course of conduct on the part of counsel for plaintiff aimed at preventing defendant from having a fair and impartial trial." *Reetz, supra,* pp 111-112, quoting *Steudle v Yellow & Checker Cab & Transfer Co,* 287 Mich 1, 11-12; 282 NW 879 (1938). For example, in attempting to convince the jurors to return a verdict for a substantial monetary award, plaintiff's counsel referred to the defendant's executives as sitting in their "plush paneled corporate offices in Pennsylvania" and "sitting at the country club or something having lunch" with no concern for the complaints of consumers. Further, counsel advocated

that a substantial verdict was required because "money talks," and the corporate executives would then "sit up and take notice" of the opinion of the jurors. He then stated:

> They snicker now. They treat what we are doing here lightly, but I will tell you something, if you return a substantial verdict against the defendants, they won't snicker at you.

The last comment quoted above leaves the clear impression that, unless the jurors return a verdict in plaintiff's favor for a substantial sum of money, they will have been made fools of by the defendant. Such comments have no place in a courtroom. See *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339; 273 NW2d 75 (1978), reh den 406 Mich 1103 (1979), where counsel's comments on experts showed a steady purpose to prejudice the jury. The only conceivable purpose of these comments was to inflame the prejudice of the jurors against the defendant, to play upon the helplessness individuals sometimes feel in their dealings with a large corporation.

Plaintiff's counsel delved into another area of impermissible and prejudicial argument with the following comments:

> So the issue is really whether you are going to put the stamp of approval on their conduct, and let business go on as usual, and if you find for the defendants, I can assure you business will go on as usual because there is no reason for business not to go on as usual. There is nothing to change it.
>
> They will continue to manufacture this tile, they will continue to be careless not to test it, and send it out and install more hundreds of thousand of millions of square feet of it.
>
> And then there is going to be somebody else out there just like my dad; could be me, could be you,

Mr. Loper, could be your wife, Mr. Yoesting, could be your wife, Mr. Armitage, could be your mother, could be your father. Somebody is going to slip and fall on that tile because it is unreasonably dangerous, because it is slippery and maybe they won't be so lucky.

You know, my dad broke his leg. It crippled him for the rest of his life, but he only broke a leg. Remember those statistics from the National Safety Council in '76 alone there were over fourteen thousand deaths. So maybe they won't be so lucky.

Then when that happens, if you look back and you have returned a verdict in favor of the defendant, then what are you going to say? You are going to say, you know what, we were wrong. That tile was dangerous.

But if you return a verdict in favor of my mom and dad in this case, you reject the defendant's conduct, you put a big "R" on it, you reject it.

In *Clark v Grand Trunk W R Co*, 367 Mich 396, 400; 116 NW2d 914 (1962), the Supreme Court noted that any attempt to appeal to the sympathy of the jury is improper, and any attempt to appeal to the jurors' self-interest by suggesting what the consequences of the verdict would mean to them personally constitutes error requiring reversal. We have no doubt that this is precisely what plaintiff's counsel sought to do in his argument to the jury. When this error is considered in conjunction with the improper remarks discussed earlier, we are convinced that the defendant was denied its right to a fair trial before an impartial jury.

The trial court did instruct the jury that (1) the argument of the attorneys was not evidence, (2) defendant, as a corporation, was entitled to the same impartial treatment as individuals, and (3) the verdict must be solely to compensate plaintiff and not to punish defendant. However, viewing all

of the improper remarks made by plaintiff's counsel, we do not find it probable that the court's instructions were enough to obviate the clear prejudicial impact of the remarks. Therefore, we find that a new trial is mandated by the improper closing argument given by plaintiff's counsel.

The third independent basis for reversing the judgment for plaintiff and remanding for new trial results from the trial court's refusal to give a requested jury instruction on comparative negligence, and its decision to instruct the jury, as follows, that they were to presume that Duke acted with reasonable care:

> Because Edward Duke, Sr. has died and cannot testify, you must presume that he was in the exercise of ordinary care for his safety at the time of this accident. There has been no evidence of any negligence on the part of Mr. Duke, and therefore this presumption is conclusive.

The trial court denied defendant's request for a comparative negligence instruction because (1) it would not be permissible to infer that Duke walked briskly inside the restaurant simply because he did so outside and (2) it would be impermissible to infer negligence based on (1).

Pursuant to GCR 1963, 516.6, now MCR 2.516(D)(2), pertinent portions of the Michigan Standard Jury Instructions shall be given if they are applicable and they accurately state the law. Noncompliance with this rule is not a basis for reversal unless it results in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice. *Johnson v Corbet,* 423 Mich 304, 325-326; 377 NW2d 713 (1985).

When deciding whether an instruction on com-

parative negligence is appropriate, the question is whether, in viewing the evidence most favorably to the defendant, there is sufficient evidence for the jury to find negligence on the part of the injured plaintiff. *Bluemlein v Szepanski,* 101 Mich App 184, 189; 300 NW2d 493 (1980). Circumstantial evidence and permissible inferences therefrom may constitute sufficient proof of negligence. *May v Parke, Davis & Co,* 142 Mich App 404, 417; 370 NW2d 371 (1985). The trend is to allow all issues, when supported by facts, to go to the jury. *Charleston v Meijer, Inc,* 124 Mich App 416; 335 NW2d 55 (1983).

Viewing the evidence most favorably to the defendant, the record discloses the following facts. Customer Virgil Ross observed Duke walking with a limp at a fast pace outside the restaurant where there was a light and intermittent rain falling. Although it is reasonable to infer that Duke continued to limp indoors, it is not reasonable to infer from this evidence alone that he maintained his fast pace and then to infer from this inference that he failed to use reasonable care. However, the testimony also showed that he fell 6½ to 7 feet from the door as a customer grabbed the door which was closing behind him. Once inside, the customer and two employees noticed that the floor was dry. Plaintiff's expert witness testified that the floor had a high degree of safety when dry. How much, if any, moisture was tracked in on Duke's shoes is unknown. It is known, however, that he had to walk across a carpeted mat to reach the quarry tile floor. Though no witnesses observed Duke at the precise moment of the fall, three witnesses testified that he may have stated that his bad leg gave out on him. While this was contradicted by his wife's testimony which implied that he slipped because the floor was wet, her

testimony does not reveal whether Duke used due care in light of all the circumstances.

From these facts, one could reasonably infer that the floor was in a dry and safe condition when Duke stepped on it. Furthermore, the jury could infer from Duke's ability to travel 6½ to 7 feet, while manifesting a limp, before the restaurant door closed behind him that he was in fact still walking at a brisk pace and that this was not reasonable conduct. Thus, viewing the evidence most favorably to the defendant, a factual question regarding Duke's exercise of due care was raised, and the request for an instruction on comparative negligence should have been granted. At the same time, it was error to instruct the jury that it must presume due care as a result of Duke's death. Rather, the court should have given SJI2d 10.08, which provides for a rebuttable presumption of due care as a result of the injured party's death.

The defendant's remaining arguments on appeal are without merit. The trial court's denial of defendant's pretrial request to add one Robert Brungraber as an expert witness was not an abuse of discretion. Pursuant to a local court rule, the parties were directed to complete a discovery pretrial questionnaire, which gave notice that the names and addresses of all known witnesses were to be listed and that the failure to list a known witness would bar his production at trial unless the omissions were excused by the court for good cause shown. In response to the questionnaire, defendant failed to list any names or addresses.

After a pretrial conference of November 4, 1983, the trial court ordered that all expert witnesses be disclosed within ninety days and all discovery be completed within 150 days. However, defendant did not give notice that Robert Brungraber might be called as a witness until November 7, 1984. On

November 26, 1984, plaintiff moved to strike Brungraber as a witness because defendant did not establish good cause for failing to list the witness within the court-ordered time limits. At a hearing held to consider the matter, the trial court ruled that because defendant failed to file a formal and timely motion to add Brungraber as a witness, it would be unreasonable to add him as an expert at that late stage of a complex case.

We find no abuse of discretion. Defendant has failed to suggest, either at the hearing on plaintiff's motion or here on appeal, its reasons for failing to list its proposed expert witness within the time limits set by the court. Thus, it must be assumed that defendant cannot establish good cause for the omission as required by the local court rule. Defendant's assertion that the November 4, 1983, pretrial order permitted the addition of further witnesses upon prompt notice is without merit since the order also states that "all experts shall be disclosed within 90 days." In light of this more specific order, we believe that the "prompt notice" provision of the pretrial order referred only to nonexpert witnesses.

We also reject defendant's claim that the pretrial order was applied inconsistently. While the pretrial order did require plaintiff to file a detailed damage specification by January 4, 1984, defendant never filed a formal motion objecting to plaintiff's alleged failure to comply with the order. Further, no prejudice occurred since plaintiff filed a detailed damage specification prior to the pretrial conference and plaintiff's answers to interrogatories, filed on October 5, 1983, provided defendant with information on the alleged damages. There was no abuse of discretion. *Wood v Posthuma,* 108 Mich App 226, 230; 310 NW2d 341 (1981).

Defendant also argues that the court abused its discretion in denying defendant's motion for adjournment to redepose Dr. Schwartzman on grounds that defendant was unaware prior to the deposition of the death of Edward Duke, Sr. We are unpersuaded by the defendant's arguments. While defendant's request for an adjournment was in fact denied, we note that the trial was adjourned anyway for one week to enable scheduling on a daily basis without interruption. Defendant's failure to avail itself of the opportunity presented makes it difficult for us to accept that it was prejudiced by the denial of its request for an adjournment. Further, defense counsel was reminded after his objections to certain depositional testimony were denied that he was free to have the doctor testify in court. Whatever relevancy defendant attached to the death of Edward Duke, Sr., could then have been explored. Nonetheless, defendant also declined this invitation. Under such circumstances, we can find no abuse of the trial court's discretion.

We next reject defendant's objections to the trial court's decision to permit plaintiff to amend her complaint. The amendment enabled plaintiff to specifically include a breach of warranty claim in addition to her claim of negligence. The trial court permitted the amendment because, among other reasons, the defendant's affirmative defenses denied any breach of warranty. Further, in its pretrial conference questionnaire, defendant framed the issues as containing a breach of warranty claim and averred in its factual statement that no such breach occurred. Obviously, then, defendant could not have been prejudiced by the late amendment of the complaint. We also note that the Supreme Court has held that under the common law of products liability, breach of implied war-

ranty and negligence claims involve identical evidence and require proof of the same elements. *Prentis v Yale Manufacturing Co,* 421 Mich 670, 692; 365 NW2d 176 (1984). No abuse of discretion occurred. *Welke v Kuzilla,* 140 Mich App 658, 665; 365 NW2d 205 (1985).

Defendant also argues that it was error to permit the introduction of plaintiff's hearsay testimony regarding the telephone conversation she had with her husband, during which Edward Duke, Sr., allegedly informed her that "the floor was wet, my feet went out from under me, and I fell." The conversation took place approximately three minutes after the accident and its introduction into evidence was permitted under the "present sense impression" exception to the hearsay rule, MRE 803(1). That rule defines a present sense impression as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

We find no error. As noted in *Johnson v White,* 144 Mich App 458; 376 NW2d 130 (1985), the phrase "immediately thereafter" is not synonymous with "instantly thereafter." Rather, a review of the facts and circumstances of each case is necessary in order to determine the likely trustworthiness of the statement. 144 Mich App 468; *Hewitt v Grand Trunk W R Co,* 123 Mich App 309; 333 NW2d 264 (1983). We believe that the statement here in question was made soon enough after the event and under circumstances which negate the likelihood of memory problems and calculated distortions of the event. *Id.,* p 317. Whether the telephone conversation actually took place as plaintiff remembered it or whether the witnesses who assisted Mr. Duke in telephoning his wife

offered a more accurate version of the conversation was a question for the trier of fact.

Defendant further claims that error occurred in plaintiff's testimony which related statements made by Mr. Duke to the medical personnel at the hospital. According to plaintiff's testimony, the medical personnel asked Mr. Duke to explain what happened, and he replied, according to plaintiff, that he "stopped in for a cup of coffee, the floor was wet as he entered the door as his feet went out from under him, and he just couldn't control his fall." The testimony was admitted under MRE 803(3), the hearsay exception for statements of the declarant's then existing mental, emotional or physical condition.

We agree with defendant that only Mr. Duke's later statement to hospital personnel that he was in pain was admissible under MRE 803(3), and not his explanation of the circumstances of the accident. However, we find no error since the statement was in fact admissible under MRE 803(4), which provides:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or *the inception or general character of the cause or external source thereof* insofar as reasonably necessary to such diagnosis and treatment. [Emphasis supplied.]

A patient's statements are likely to be reliable because of the patient's strong motivation to tell the truth and because facts reliable enough to serve as a basis for medical diagnosis are also reliable enough to escape the hearsay proscription. *People v Creith,* 151 Mich App 217; 390 NW2d 234 (1986). We believe Mr. Duke's statement that he

lost control and fell, and that he was in pain as a result of the fall, was reasonably necessary to diagnose and treat his fractured leg, particularly in view of the unusual nature of the fracture.

While it may not have been necessary to add that the floor was wet, this was cumulative of plaintiff's earlier hearsay testimony relating Duke's statements to her on the telephone. The erroneous admission of hearsay testimony is harmless error where the same facts are shown by other competent testimony. *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979). Thus, since the trial court reached the correct result, its reliance on MRE 803(3) rather than 803(4) does not constitute error requiring reversal. *DeWitt Twp v Clinton Co,* 113 Mich App 709; 319 NW2d 2 (1982).

The remaining arguments advanced by defendant need not be considered in light of our resolution of the case. The judgment for plaintiff is reversed and the case remanded for a new trial.

Reversed and remanded.