INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA v DORSEY (ON REMAND)

Docket No. 248412. Submitted November 5, 2006, at Lansing. Decided November 16, 2006, at 9:05 a.m.

On remand, the Court of Appeals *held*:

1. The trial court did not abuse its discretion by admitting the divorce transcripts for the purpose of impeaching Miller's credibility through his prior inconsistent statements in the divorce proceedings.

2. The trial court did not abuse its discretion by admitting memos Charles Harder wrote to some of the defendants while UBN began assuming leadership of Harder's radio network. The memos were properly admissible for the purposes of impeaching Miller and demonstrating the effect they may have had on Miller. While the trial court improperly admitted the memos in their entirety for the purpose of demonstrating Harder's state of mind, evidence that is inadmissible under the Michigan Rules of Evidence for one purpose is nonetheless admissible for a proper purpose, subject to a limiting instruction under MRE 105. Moreover, the trial court did not err by restricting the defendants' cross-examination of Miller and another witness concerning Harder's feeling toward the plaintiffs at the time of trial. Such evidence was not relevant under MRE 401 and 402 and lacked particularized guarantees of trustworthiness.

3. A new trial is not warranted on the ground that the plaintiffs' counsel attempted to impeach the defendants' expert witness by attributing to the Delaware Supreme Court a quotation concerning Delaware corporation law that was actually from a treatise and contradicted the Delaware court's holding. While no objection was made, the expert was quite familiar with the cited case and disagreed with the plaintiffs' counsel. The trial court also instructed the jury that the attorneys' questions are not evidence.

4. The defendants' counsel failed to timely object to references during closing arguments to settlement negotiations. Thus, the issue is not properly preserved for appellate review.

Affirmed and remanded for reinstatement of mediation sanctions.

Evidence — Admissibility of Evidence — Impeachment.

Evidence that is inadmissible for one purpose is still admissible for another proper purpose, subject to a limiting instruction (MRE 105).

*Soble & Rowe, LLP* (by *Richard A. Soble, Jonathan D. Rowe,* and *Mary R. Minnet*), and *Bodman, Longley & Dahling, LLP* (by *Dennis J. Levasseur*), for International Union, United Automobile, Aerospace and Agri-

cultural Implement Workers of America; United Broadcasting Network, Inc.; Daniel Sherrick; Roy Wyse; and Frank Joyce.

*Cooter, Mangold, Tompert & Wayson, L.L.P.* (by *Dale A. Cooter* and *Donna S. Mangold*), and *Ellis, Eby, Conner, Smillie & Bourque* (by *Thomas B. Bourque*) for Helen Dorsey, Pat Choate, Edward A. Miller, and Kay Casey.

ON REMAND

Before: METER, P.J., and KELLY and SCHUETTE, JJ.

PER CURIAM. In this fraud and misrepresentation case, defendants Helen Dorsey, Pat Choate, and Edward Miller and third-party plaintiff Kay Casey[1] appealed as of right the denial of their motion for a new trial or judgment notwithstanding the verdict (JNOV) in favor of plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and United Broadcasting Network, Inc. (UBN), and third-party defendants Daniel Sherrick, Frank Joyce, and Roy Wyse.[2] We reversed and remanded. 268 Mich App 313; 708 NW2d 717 (2005). Our Supreme Court reversed that portion of the decision granting a new trial "for the reasons stated in the partial dissent . . . ." 474 Mich 1097 (2006). Our reversal was based on a determination that the trial court erred in admitting the Miller divorce hearing transcripts into evidence because the transcripts were a part of a sealed record. The dissent argued that reversal was not warranted because (1) the divorce transcripts were not part of the sealed record and (2) even if the divorce

---

[1] We will refer to these parties as "defendants" or "the Choate parties."

[2] We will refer to these parties as "plaintiffs."

transcripts were a part of the sealed record, the use of the transcripts constituted unfair surprise only to defense counsel, not to defendant Miller himself.

On remand, we must determine (1) whether the transcripts were used not as impeachment evidence but as an "improper assault on Miller's character"; (2) whether the "Harder memos" were properly admitted; (3) whether a treatise was properly used to impeach defendant's expert, John Olsen; and (4) whether there was error requiring reversal in a reference during closing argument to settlement negotiations. We affirm the trial court's decision on each of these issues, but we remand the case for reinstatement of mediation sanctions pursuant to our Supreme Court's order.

## I. IMPEACHMENT EVIDENCE

Defendants argue that even if this Court were to find that the use of the transcripts did not violate Judge Ross Campbell's order sealing the transcripts, the manner in which they were used went so far beyond the bounds of zealous advocacy that a new trial is required. We disagree.

### A. STANDARD OF REVIEW

The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Craig v Oakwood Hosp,* 471 Mich 67, 76; 684 NW2d 296 (2004).

### B. ANALYSIS

The trial court properly allowed the impeachment of Miller's credibility. MRE 607 allows the credibility of any witness to be attacked by any party. MRE 613 acknowledges that a witness may be asked about prior

inconsistent statements. Plaintiffs' counsel questioned Miller about his job at UBN and asked whether he had ever been fired by the National Center for Manufacturing Sciences (NCMS) and whether he had a business relationship with Dorsey in the summer of 1996. Miller responded that he had never been fired by NCMS, had worked for UBN beginning in April 1996, and had a business relationship with Dorsey during the summer of 1996. Plaintiffs' counsel then introduced the divorce transcripts in order to show that Miller's testimony during those proceedings was exactly contrary to the responses given at trial during the present case.

Miller was then given the opportunity to explain the discrepancy. Our Supreme Court commented on this type of testimony in *Ruhala v Roby,* 379 Mich 102; 150 NW2d 146 (1967), when it stated:

> "We agree with the view stated in McCormick on Evidence, § 39, p 75:
>
> " 'If the prior statement of the witness is contradictory of his present story on the stand, the opportunity for testing the veracity of the 2 stories by the 2 parties through cross-examination and re-examination is ideal. Too often the cross-examiner of a dubious witness is faced by a smooth, blank wall. The witness has been able throughout to present a narrative which may be false, yet is consistent with itself and offers no foothold for the climber who would look beyond. But the witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common-law practice of cross-examination and re-examination was invented to explore. It will go hard, but the 2 questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false. It is hard to escape the view that evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.' " [*Id.* at 122

(opinion by BRENNAN, J.), quoting *Schratt v Fila,* 371 Mich 238, 245-246; 123 NW2d 780 (1963).]

Thus, the use of the transcripts to impeach Miller's credibility was proper, and the trial court did not abuse its discretion in admitting the transcripts for that purpose.

## II. ADMISSION OF THE HARDER MEMOS

### A. STANDARD OF REVIEW

The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Craig, supra* at 76.

### B. ANALYSIS

The Harder memos were a group of memos written by Charles Harder to Choate and Miller during the time that UBN began assuming leadership of Harder's radio network. These memos included many of Harder's complaints about the way the new management, specifically Choate and Miller, were handling UBN. This information was relevant to defendants' claim of a breach of fiduciary duty and their allegations that all the financial difficulties at UBN were the result of plaintiffs' mismanagement.

Plaintiffs sought the admission of these memos to counter testimony from Sherrick and Miller that Harder believed at the time of trial that plaintiffs were the ones who caused Harder problems at UBN. Plaintiffs wanted to admit the documents not for the truth of their contents, but to show that Miller had a motive to get rid of Harder because the memos were derogatory of Miller. Further, plaintiffs wanted to use the memos to

show that it was not plaintiffs with whom Harder was upset shortly before he left, but Miller and Choate. Finally, plaintiffs wanted to admit the memos to impeach Miller's testimony that the vast majority of Harder's complaints in these memos related to problems Harder was having with censorship, when in fact the memos did not reflect this.

Defendants argued that the memos should not be admissible to show Miller's motivation, but could be used to rebut Miller's position that most of the memos blamed plaintiffs and censorship for Harder's problems with UBN. However, defendants asserted that the trial court should not project images of the memos in the courtroom for the jury to observe, but should instead ask Miller to review the memos and then question him about whether they contained references to censorship.

The trial court agreed to admit the Harder memos, stating:

> All right. Just a moment. Seems to me that, yesterday, the witness stated—he was asked in many different ways —that the primary complaint of Mr. Harder was censorship, and this was reflected in his writings. To that extent, the Court will allow plaintiff's attorney to use these documents to impeach him, all right.

> Secondly, as to the state of mind of Mr. Harder as it relates to the issue of whether he was showing a state of mind that indicated his distress either with the Choate parties or with the UAW, based on the testimony presented by this witness, the Court will allow the memos to show that.

> With a request from either party, the Court will instruct the jury. I don't intend to instruct them after or before each memo. I will do it in connection with all of what's being offered in this line of questioning and instruct them that these memos are not being offered for the truth of what the person states in the memo but, rather, to show the state of

mind of that person, Mr. Harder. And, secondly, to the extent they're being offered for another purpose, it's to address the statements made by this witness in court yesterday.

Plaintiffs argue that this Court should decline to review defendants' argument that the memos were improperly admitted under MRE 803(3), the state-of-mind exception to the hearsay rule, because defendants failed to present the arguments at trial that they now assert on appeal: (1) that the trial court failed to determine that Harder's state of mind was at issue and (2) that the memos were more prejudicial than probative under MRE 403. After a lengthy discussion of whether the Harder memos should be admitted, the trial court concluded by stating:

> Now, what I'd like to do is bring the jury out. And I know there may be other objections, but this has been resolved, right? I don't want to hear more interruptions. And, certainly, for the record, you have preserved any and all objections . . . you have to any of these memos, okay.

In light of the trial court's resolution of this matter, we find that defendants' arguments were preserved. MRE 103(a) states in relevant part, "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Thus, any issue relating to the admission of the Harder memos is properly before this Court.

Plaintiffs also assert that this Court should decline to review defendants' argument that the memos did not reflect Harder's state of mind because plaintiffs claim that defendants contributed to the admission of these statements through negligent inaction. Plaintiffs argue that defendants never made specific objections to any

particular memo as not reflecting Harder's state of mind and failed to indicate which parts of any memo should be removed. This panel reviewed the discourse between the attorneys and the trial court on this matter, and it appears that defense counsel informed the trial court that he believed there were very few instances in the Harder memos in which Harder actually expressed a state of mind. Defense counsel gave an example: "I am heartsick. I am tired." Defense counsel announced that because Harder wrote in such a prolific manner, defendants did not think the memos should be admitted. At that point, the trial court changed the subject to the matter of impeachment. Therefore, we reject plaintiffs' contention that this Court should decline to review this issue because the record reflects that defendants did preserve this issue and did object to the admission of all but a few very specific statements.

We now analyze the three grounds on which the trial court admitted the Harder memos: (1) to rebut Miller's testimony, (2) to show Harder's state of mind, and (3) to show that Miller had a motive for trying to "get rid of" Harder.

### REBUTTAL OF MILLER'S TESTIMONY

Defendants argue that the Harder memos were not properly used to impeach Miller's assertions that the memos contained mainly complaints about plaintiffs' censorship. Defendants assert in their brief on appeal, and they argued at trial, that it might have been proper for plaintiffs to show a memo to Miller, ask if there was anything in the memo regarding censorship, and then, in the event Miller's testimony did not properly reflect the content of the particular memo, publish the part of the memo that was impeaching. Defendants cite no legal authority for this proposed method. However, this

argument is grounded in MRE 608(b), which prohibits impeachment of a witness on collateral matters.

In *People v Spanke*, 254 Mich App 642, 644-645; 658 NW2d 504 (2003), citing *People v Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995), this Court stated that although MRE 608(b) generally prohibits impeachment of a witness by extrinsic evidence regarding collateral, irrelevant, or immaterial matters, a party may introduce rebuttal evidence to contradict the answers elicited from a witness on cross-examination regarding matters germane to the issue if the rebuttal evidence is narrowly focused on refuting the witness's statements. In this instance, because the rebuttal evidence in this case refuted or weakened testimony on a material, substantive issue in the case—whether Harder left the radio station because of disagreements with plaintiffs or defendants—it was not subject to exclusion under MRE 608(b).

Further, defendants assert that certain memos were not impeaching at all. For example, they note that Miller testified that Harder opposed moving the radio operations to Lake City, Florida. On the next day of testimony, plaintiffs introduced a memo regarding that very issue that was consistent with Miller's testimony. Therefore, defendants argue, this could not have been impeachment evidence. The testimony being impeached, however, was Miller's broad assertion that the memos mainly contained Harder's complaints about plaintiffs' censorship. Thus, the memo about Harder's opposition to a move was introduced to show another memo in which Harder was not complaining about censorship. The memo impeached Miller not by what it did contain, but by its absence of any reference to censorship by plaintiffs.

The Harder memos were offered to impeach Miller and to prove that he was testifying untruthfully about

the content of the memos. They were not admitted to prove the truth of their contents. Out-of-court statements not offered for the truth of the matter asserted do not constitute inadmissible hearsay under MRE 801(c).

Further, the memos were not more prejudicial than probative. MRE 403 allows the trial court to exclude evidence that is more prejudicial than probative. The memos were probative of Miller's contention that they contained mainly references to censorship, and, as will be discussed later, they were probative of Miller's motive to get rid of Harder. Therefore, we conclude that the trial court did not abuse its discretion in admitting the Harder memos for the purpose of impeaching Miller.

### HARDER'S STATE OF MIND

Next, defendants argue that the trial court improperly admitted the Harder memos under MRE 803(3) to prove Harder's state of mind. MRE 803(3) excepts from the rule against hearsay "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ."

Defendants argue that the trial court should have excluded the evidence because Harder's state of mind was not relevant. Before a statement may be admitted under MRE 803(3), the trial court must first determine that the declarant's state of mind is a relevant issue. *People v DeWitt*, 173 Mich App 261, 269; 433 NW2d 325 (1988). Plaintiffs contend that defendants are the ones who placed Harder's state of mind at issue in their opening arguments. The transcripts do reflect that defense counsel made the following remarks during opening statements:

Oh, sure, [plaintiffs] had the right to have input on content, they had—they used it to censure [sic] the airways, they used it to sensor [sic] Chuck Harder . . . .

\* \* \*

The—and they intended and did sensor [sic] and impact Chuck Harder's on-air performance. It is incorrect to suggest that we caused the fight with Harder. What actually happened, the evidence is going to show you, is that our money partner to [sic] UAW turned the heat up on us right from the get go. Get him under control or he's gone and our people foolishly, looking back on it, hindsight is 20/20, went along and tried to carry it out as best they could. And to suggest otherwise that somehow we cared about Chuck Harder, as opposed to them, let's just say the evidence will not support that.

In 1996, this is in the summer as I recall it, this is—in 1996 there was to be a meeting and this is at this time. When you heard this morning, hey, they didn't have nothing to do with Harder, you know, the problems with Harder, it's not our fault. They didn't care about Harder, our fault. . . .

\* \* \*

The problem was that we believe that the evidence will demonstrate that [plaintiffs] intended Harder off the air at some point. Oh, not in the beginning, they needed him for a little bit because he still had those affiliates. But over time Harder was toast from the minute this was signed and they intended that to happen in due course.

And the way they did it was they took it over.

Additionally, during defendants' cross-examination of Sherrick, defendants inquired about Harder's views on the problems with the network. Defendants cannot complain about the introduction of evidence if they made the evidence relevant by raising the issue at trial. See *People v Knapp,* 244 Mich App 361, 377-378; 624

NW2d 227 (2001). Here defendants introduced the issue of which party caused Harder to leave the station. Therefore, defendants' assertion that Harder's state of mind was not relevant is without merit.

Next, defendants assert that even if Harder's state of mind were relevant, the memos do not reflect his state of mind. Defendants assert that a court may admit a part of a statement that *expresses* the declarant's state of mind, but it should exclude the part of the statement that *explains* the state of mind. The only Michigan case defendants cite is *Duke v American Olean Tile Co,* 155 Mich App 555; 400 NW2d 677 (1986). In *Duke,* a slip-and-fall case, the defendant testified that he "stopped in for a cup of coffee, the floor was wet as he entered the door as his feet went out from under him, and he just couldn't control his fall." *Id.* at 571. The testimony was admitted under MRE 803(3); however, this Court found that only the defendant's later statement to hospital personnel that he was in pain was admissible under MRE 803(3) and his explanation of the circumstances of the accident was not. The Court then found that there was no error because the statement was admissible under MRE 803(4) (statements made for purposes of medical treatment).

Harder did make several comments that would be admissible under MRE 803(3), such as "I am heartsick" and "I am very upset and angry." However, the scope of MRE 803(3) is very narrow and does not allow the admission of any statements explaining the declarant's state of mind. Therefore, the admission of the memos in their entirety for the purpose of proving Harder's state of mind was an abuse of discretion.

### MILLER'S MOTIVE

Next, defendants argue that the Harder memos should not have been admitted for the purpose of

proving Miller's motive. Plaintiffs theorize that the memos reveal animosity between Harder and Miller and that the nature of the memos indicates that Miller had a motive for trying to force Harder to leave the radio station. Plaintiffs assert that the memos demonstrate that Harder was very upset and angry with Miller and made many complaints about his actions. Plaintiffs believe that the natural response of anyone in Miller's position, upon reading the memos, would be to feel anger toward Harder and to view him as a serious problem. Plaintiffs contend that the memos show that Miller's testimony that he was never angry with Harder about his complaints was simply not credible. Plaintiffs posit this theory as an alternative to defendants' theory that plaintiffs were the ones who forced Harder to leave the station by their censorship.

Defendants argue that there is nothing in the Harder memos concerning Miller's reaction to anything Harder wrote. Defendants state that Miller testified that the memos did not make him angry and that mere inferences that such memos "might" make "someone" unhappy or angry were not enough to allow the admission of the memos.

Plaintiffs cite *People v Fisher,* 449 Mich 441, 449-450; 537 NW2d 577 (1995), in support of their argument that the memos were properly admitted to show the effect they had on Miller. In *Fisher,* a case in which a husband murdered his wife, our Supreme Court upheld the trial court's ruling that " '[n]on-hearsay circumstantial evidence as to the existence and extent of discord shall be admitted when in the form of statements that the victim made reasonably in point of time before her demise . . . .' " *Id.* at 448-449. Our Supreme Court concluded that marital discord, motive, and premeditation were all at issue and that the statements of

the victim-wife were admissible to show the effect they had on the defendant-husband. Our Supreme Court concluded that this testimony did not offend the hearsay rule because it does not constitute hearsay, and offered the following support for its decision:

> "Wherever an utterance is offered [into] evidence [for] the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned. [6 Wigmore, Evidence (Chadbourn rev), § 1789, p 314. Emphasis added.]"

Likewise, in 4 Weinstein, Evidence, ¶ 801(c)[01], pp 801-94 to 801-96:

> "An utterance or a writing may be admitted to show the effect on the hearer or reader when this effect is relevant. The policies underlying the hearsay rule do not apply because the utterance is not being offered to prove the truth or falsity of the matter asserted." [*Id.* at 449-450.]

Here, as in *Fisher*, we have a situation in which statements made by an individual may be relevant to an ultimate issue. Defendants' argument that the memos are inadmissible because Miller denied that he felt anger toward Harder is unpersuasive. Miller's reaction to the Harder memos is relevant to defendants' assertion that plaintiffs were the ones who forced Harder out of the radio station. The jury could choose to believe or not believe Miller's contentions that the memos did not make him angry.

### RESTRICTION IN CROSS-EXAMINATION

Finally, defendants also argue that they were erroneously restricted in their cross-examination of Harder's attorney, Robert Persante, by the trial court. Defendants assert that the jury should have been allowed to

hear testimony from Persante about Harder's present day feelings toward plaintiffs. Both parties acknowledge that, by the time of trial, Harder had become disenchanted with plaintiffs. He felt that he should have received a bigger settlement upon leaving the radio station, which caused him to file his lawsuit.

Defendants attempted to show on cross-examination of Miller that, at the time of trial, Harder considered his "heartsickness" to be the fault of the UAW and that he was mistaken in 1996 about who was causing his problems. The trial court ruled that defendants would not be permitted to examine Miller about the current state of his relationship with Harder. MRE 402 generally provides that all relevant evidence is admissible and that evidence that is not relevant is not admissible. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Harder's relationship with Miller at the time of trial was not relevant to his reasons for leaving the radio station in 1996. That Harder may now have a different perspective on the events that led to his leaving the station in 1996 does not make it more or less probable that plaintiffs caused him to leave, as defendants contend, or that defendants caused him to leave, as plaintiffs contend.

Additionally, Harder's present feelings toward plaintiffs are lacking in trustworthiness given the litigation between Harder and plaintiffs. As our Supreme Court recently stated in *People v Katt,* 468 Mich 272, 290; 662 NW2d 12 (2003), in order to be admissible under the exception found in MRE 803(24), "a hearsay statement must: (1) demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical excep-

tions, (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission." There is no complete list of factors to consider when determining whether a statement has " ' "particularized guarantees of trustworthiness." ' " *Id.* at 291 (citations omitted). Instead, a court must examine the "totality of the circumstances" and "consider all factors that add to or detract from the statement's reliability." *Id.* at 291-292. However, our Supreme Court did refer to the Federal Rules of Evidence Manual and stated that the factors contained in it, while not all-inclusive, provided general guidelines for courts. This list of factors includes whether the statement appears to have been made in anticipation of litigation and is favorable to the person who made or prepared the statement. *Id.* at 291 n 11. Therefore, the trial court did not err in restricting defendants' cross-examination of Miller and Persante on the subject of Harder's current feelings toward plaintiffs.

### C. CONCLUSION

That our rules of evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes. Rather, the evidence is admissible for a proper purpose, subject to a limiting instruction under MRE 105.[3] *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). The Harder memos were properly admissible for the purpose of impeaching Miller and to demonstrate the

---

[3] Here the trial court gave a limiting instruction when the questioning on the Harder memos began. The jury was told that "it's important for you to understand to not consider them [the memos] for their truth." Further, at the end of the trial, the trial court reminded the jury to consider evidence that was admitted for a limited purpose only for that purpose.

effect they may have had on Miller; thus, the trial court did not abuse its discretion in admitting the memos, even though it improperly admitted the memos for the purpose of demonstrating Harder's state of mind.

### III. EXPERT IMPEACHMENT

#### A. STANDARD OF REVIEW

At trial, defense counsel failed to object to the question posed to its expert witness; therefore, this issue is not properly preserved for appeal. However, "this Court may consider unpreserved issues where failure to do so would result in manifest injustice." *People v Griffin*, 235 Mich App 27, 44; 597 NW2d 176 (1999), citing *People v Metzler*, 193 Mich App 541, 548; 484 NW2d 695 (1992). In this case, defense counsel had no reasonable way to know when it was asked that the question posed contained any error; therefore, this Court will review this issue.

#### B. ANALYSIS

While cross-examining defendants' expert witness, John Olson, plaintiffs' attorney asked:

*Q*. Right. Now, here's a—the Delaware Supreme Court says, in a case called <u>Nixon v Blackwell</u> [626 A2d 1366] from 1993, "Statutory closed corporations—" that's checking the box or filling it out, right?

*A*. Right.

*Q*. ". . . have not found particular favor with practitioners. Practitioners have, for the most part, viewed the complex statutory provisions underlying the purportedly simplified operational procedures for close corporations as legal quicksand of uncertain depth and have adopted the view that the objectives sought by the sub chapter [sic] are achievable for their clients with considerably less uncer-

tainty by cloaking a conventionally created corporation with the panoply of charter provisions, transfer restrictions[,] . . . by-laws, stockholders' agreements[,] buy-sell arrangements, irrevocable proxies, [voting] trusts, or other contractual mechanisms which were and remain the traditional method for accomplishing the goals sought by the closed corporations provisions." [Plaintiffs' counsel's commentary while reading this quote has been omitted.]

This sole question, defendants contend, warrants a new trial because the language that plaintiffs' counsel attributed to the Delaware Supreme Court was actually from a treatise the court had cited and was the opposite of the court's actual holding in that case. Defendants fear that the jury would view Mr. Olson as being wrong if his opinion were seen as being at odds with the Delaware Supreme Court.

Plaintiffs point to the fact that Olson was neither shaken nor persuaded by counsel's question:

*Q.* . . . In other words, sir, the Delaware Supreme Court still feels you can have a closed corporation without checking the box, isn't that so?

*A.* No, that's not what the court said.

*Q.* No, not at all—

*A.* What the court said was that close corporations—that what I think I said in my testimony—work in a limited number of circumstances because they kind of assume that this corporation is never going to grow. It may be better—and it's often the practice—my practice, too—to use other mechanisms in the early years of the corporation, as you say as was done here, like shareholders' agreements and super-majority provisions, to provide various degrees of control until the corporation reaches a state where it's ready to move on to another status. But that doesn't make it a close corporation. I'm not sure what the significance is of the label.

Olson's answer indicated that he was quite familiar with this case, and he fully and articulately disagreed

with plaintiffs' counsel. Furthermore, the jury was instructed that "[e]vidence consists of the sworn testimony of the witnesses . . . . Questions which the attorneys ask the witness are *not* themselves evidence, it is the answers which provide the evidence." (Emphasis added.)

In addition, defendants do not cite for this Court a single case, statute, or rule, or any other legal authority, to support their proposition. Defendants' witness testified about Delaware law; plaintiffs' lawyer was attempting to impeach him. The jury was given an instruction concerning what is and is not evidence; no objections were raised at trial, and defendants point to no law to support warranting a new trial. Therefore, defendants' argument on this issue fails.

### IV. REFERENCE TO SETTLEMENT NEGOTIATIONS

Defendants failed to object to the alleged misconduct when it occurred and instead waited until the end of closing arguments. To preserve most issues, a party must object below. *Tringali v Lal*, 164 Mich App 299, 306; 416 NW2d 117 (1987). Objections must be timely. See *Klapp v United Ins Group Agency, Inc (On Remand)*, 259 Mich App 467, 475; 674 NW2d 736 (2003). A party opposing the admission of evidence must have timely objected at trial and specified the same ground for objection that it asserts on appeal. MRE 103(a)(1); see also *People v Grant,* 445 Mich 535, 546; 520 NW2d 123 (1994). To be timely, an objection should be interposed between the question and the answer. See *Carreras v Honeggers & Co, Inc,* 68 Mich App 716, 722; 244 NW2d 10 (1976). Here, counsel failed to timely object; thus, this issue is not properly preserved for appellate review.

Affirmed. But we remand for reinstatement of the mediation sanctions pursuant to our Supreme Court's order. We do not retain jurisdiction.